### Richmond.

REID BROS. & CO. *v.* NORFOLK CITY R. CO. & OTHERS.

December 10, 1896.

1. CHANCERY PLEADING—*Dismissing bill—Leave to amend—Failure to state ground of amendment—Appellate Court.*—Although a decree dismissing a bill for want of equity shows that leave was asked to amend the bill and was refused, the appellate court will not reverse the decree when the record fails to disclose in what respect the complainant proposed to amend.

2. INJUNCTIONS—*Prohibitions—Dissolution—When appellate court will not interfere.*—Upon a pure bill of injunction to enjoin the performance of certain acts, but containing no prayer for any mandatory acts to be performed, where the injunction as prayed has been granted, without any mandatory provision, if it appears that the injunction has been dissolved by the trial court, and pending an appeal (without supersedeas) from the order of dissolution the acts enjoined have been performed, the court of appeals will not disturb the action of the trial court, as a reversal would be unavailing to the complainant even if the decree were wrong.

3. SERVITUDES—*Substitution of electricity for horses.*—The substitution of a double track electric street car line for a single track horse car line is not an additional servitude or burden on the street for which the abutting lot owners are entitled to compensation.

Appeal from a decree of the Circuit Court of the city of Norfolk, pronounced September 29, 1893, in a suit in chancery wherein the appellants were the complainants, and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*Harmanson, Heath & Heath,* for appellants.

*White & Garnett,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

The Norfolk City Railroad Company had for many years prior to the institution of this suit occupied that part of Church street in the city of Norfolk lying north of Charlotte street with its single track horse-car railway, and had for a long time prior occupied that part of Church street south of Charlotte street with its double track horse-car railway. By an amendment of its charter, approved December 19, 1889 (Acts of 1889-'90, p. 36), it was permitted to substitute "cable, electricity, or other motive power," and to construct a single or double track railroad up Church street to the Fair Grounds in Norfolk county, and also along and over certain other streets mentioned in the Act of Assembly, provided that before the work of construction should be commenced in the city of Norfolk the consent of the council of the city should be first obtained. The consent of the council of the city of Norfolk was obtained by an ordinance adopted February 14, 1893, the 7th section of which reads as follows: "The said company shall use such cars as will best subserve the convenience of the people, and may move the same by horses, mules or electricity, as it may be proper; and if electricity be used, permission is hereby given to erect and maintain the necessary poles and wires; provided that existing poles shall be used wherever practicable, the work to be done under the supervision of the street, sewer, and drain commissioners, or such other agent or agents as the council may select." The ordinance, among other things, required the railroad company within six months from its adoption, to commence, and, within eighteen months from that date, to complete "the equipment of its road with electric cars of the most approved plans," and to extend its double track on Church street (then operated south of Charlotte street) to the city limits. For the faithful performance of its duties under this ordinance extending its franchises, the railroad company was

required thereby to enter into a bond in the penalty of $10,000.

The bond was duly executed, and, in strict conformity with its charter and the ordinance of February 14, 1893, the railroad company was proceeding to construct a double track railroad to be operated by electricity as its motive power along Church street north of Charlotte street, and to this end some of the poles, upon which wires were to be strung to be used for the propulsion of its cars, had been erected along Church street adjacent to the side walks, and other work done, when the appellants (complainants in the court below), styling themselves owners or occupiers of certain lots of land with buildings thereon, fronting on Church street, north of Charlotte street, in the city of Norfolk, presented their bill of complaint on behalf of themselves and all other persons, residing or owning land fronting or abutting on Church street north of Charlotte street, to the judge of the Corporation Court of the city of Portsmouth, and obtained an injunction restraining the defendants, their agents, &c., from digging holes and planting poles in front of complainants property, and the property of other persons similarly situated, abutting on Church street in the city of Norfolk, and from laying down a double track along that portion of Church street north of Charlotte street, until the further order of the court.

The Circuit Court of Norfolk city upon a motion to dissolve the injunction, heard upon the bill, the demurrer and answer of the defendant railroad company, and the affidavits filed by the complainants and defendant company, dissolved the injunction and dismissed the bill, because, in the opinion of the court, it was without equity.

From this decree an appeal and supersedeas was awarded by one of the judges of this court.

The refusal of the court below to allow the complainants to amend their bill is assigned as error.

While the decree dismissing the bill for want of equity sets

out that the complainants asked leave to amend, which the court refused, it does not disclose in what respect or in what particular they proposed to amend their bill, and hence this court is not advised as to whether or not it was error in the court below to refuse the complainants the right to amend. Aside from this, it appears that if this court were to hold that the court below so erred, it would be unavailing to the complainants. Their bill was a pure bill of injunction, and the injunction order merely restrained the defendants "from digging holes and planting poles in front of complainants property, and the property of other persons similarly situated; * * * and also from laying down a double track along that portion of Church street north of Charlotte street." It did not contain a mandatory provision requiring the railroad company to remove any poles which had already been planted, or to fill up any holes which had been already dug, or to remove any track which had been already laid.

It further appears that the decree appealed from was suspended for thirty three days to allow complainants to apply for a supersedeas, conditioned upon their executing a suspending bond in the penalty of $10,000, which they did not avail themselves of, but on the 5th of November, 1894, secured from one of the judges of this court an appeal and supersedeas, a bond being required only in the penalty of $200; whereupon the defendant railroad company, at the earliest opportunity, which was the first day of the November term, 1894, moved this court to dismiss the appeal for failure to give a proper bond, as required by secs. 3470 and 3471 of the Code; but instead of dismissing the appeal, this court on the 9th of November, 1894, on the motion of appellants, made an order modifying its order allowing the appeal and supersedeas so as to allow an appeal only, not to operate as a supersedeas to, or in any manner hinder or delay the execution of, the decree appealed from. It is now conceded that all the work proposed by the defendant railroad company, which

appellants sought to enjoin and to prevent, has been le-
gally completed under the proceedings had in the cause;
all necessary poles have been planted, wires strung, the
double track laid, and cars in operation on Church street,
north of Charlotte street.   While the affidavits read in sup-
port of the bill upon a motion to dissolve the injunction in
the court below are to the effect that Church street north of
Charlotte street was too narrow to permit a double track
electric street railway thereon without destroying the street
for business purposes, and damaging the property abutting
thereon, although no such allegation is made in the bill, it is
shown here also, and not controverted, that the street has
been widened under an ordinance of the city council of Nor-
folk, whereby this objection has been removed.

Therefore, in any view that may now be taken of the case,
the only question presented to this court is, whether or not
the construction and operation of an electric street railway
upon a street of a city, is an additional servitude or burden
thereon, for which the abutting lot owners are entitled to
compensation.

Whether or not appellants as "owners or occupiers" of the
property abutting on Charlotte street, could properly unite
their claims in one suit for the sole purpose of enjoining and
restraining the work of construction till such compensation is
paid, we deem it unnecessary to decide.

Counsel for appellants concede that a horse car railway is
not an additional servitude upon a street, and that the weight
of authority is against the proposition that electric railways
are, but rely upon the Virginia cases of *Hodges* v. *Seaboard &
R. R. Co.*, 88 Va. 653; and *Western Union Tel. Co.* v. *Wil-
liams*, 86 Va. 706, to sustain their contention that the con-
version of a single track horse-car street railway into a double
track electric street railway, is, in this case, the imposition of
an additional servitude on Church street, north of Charlotte

street in the city of Norfolk, which entitles appellants to compensation.

The case of *Hodges* v. *S. & R. R. Co.*, *supra*, involved the question whether or not the occupation of a street by a steam railroad company was the imposition of an additional burden or servitude upon the street, for which the abutting owners were entitled to compensation, and the court held that it was. In the case of *W. U. T. Co.* v. *Williams*, *supra*, the question was whether the erection of a telegraph line upon a county road is an additional servitude, and the court held that it was. Both decisions, it may be said, are in harmony with the vast majority of decisions in this country, and are founded on the well recognized distinction between those uses of streets and highways which are not promotive of the original purposes for which streets and highways are dedicated or occupied, and those uses which are promotive of such original purposes.

A very different principle applies in connection with the operation of street car lines in public streets from that applied to private corporations diverting the public street or highway from its usual and appropriate use to an essentially different use, and for the purpose of private gain.

In *Sterling's Appeal*, 111 Pa. 35, the Supreme Court of Pennsylvania held that the occupying of a county road by a pipe line, imposed an additional servitude upon the land of the farm owner, while in the case of *McDevitt* v. *The Gas Co.*, 160 Pa. 367, it held that a pipe line, laid within the limits of the street by authority of the city, did not impose any additional servitude on the land of the lot owners.

In the case of *Briggs* v. *Lewiston & Auburn Horse R. R. Co.*, 79 Maine 363 (1 Amer. St. R. 316), the Supreme Court of Maine held that when land has been lawfully taken for a street, legislative and municipal authority may authorize the construction and operation of a street railway upon it, no matter what the motor, without providing for additional com-

pensation to the land owner.    The opinion by Emory, J.,
says: .

"The laying down of rails in the street, and the running of
street cars over them for the accommodation of persons desir-
ing to travel on the street, is only a later mode of using the
land as a way, using it for the very purpose for which it was
originally taken.    It may be a change in the mode, but is not
a change in the use.    The land is still used for a highway.
The weight of authority is so manifestly in favor of this propo-
sition it is unnecessary to cite particular decisions."

"The use of electricity as a motive power for street cars
causes no greater obstruction to the streets, and imposes no
greater burden upon them than the ordinary horse railway,
with the single exception of the posts and wires.    But when
the posts are placed at the side of the railway, and the wires
sufficiently high to permit a free use of the street, they are
not a material obstruction to travel, or a use of the street
inconsistent with the purposes of its dedication.    The electric
car does not occupy as much space upon the street as
the cars with horses attached.    Comparing the electric car
with the horse car, the former is not more noisy, is cleaner,
is started and stopped quicker, moves faster, is more readily
controlled, and, by its more rapid carriage of passengers, re-
lieves the street, to some extent at least, of the general bur-
den of travel.    *    *    *    After a full consideration of the
various objections raised to the use of electricity, every court
of last resort to which the question has been submitted has
held that the electric street railway does not constitute a new
servitude, and that the use of this motive power, when duly
authorized, does not entitle abutting owners to compensation."
Booth on Street Railways, sec. 83.    In support of this propo-
sition the author cites numerous decisions by the courts of last
resort in the states of Kentucky, Maryland, Michigan, New
Jersey, Ohio, Pennsylvania, Rhode Island and Utah.    To
which may be added Georgia, North Carolina and Texas.

After reviewing the decided cases down to a later date, Keasby, in his work "On Electric Wires," sec. 15, says: "It would seem very clear that the use of electricity instead of horses to propel street cars used for the same purposes as horse cars, does not change the use of the street. The cars are of the same kind; they are used in the same way for taking people from door to door, and facilitate travel in and about the city."

In the case of *Hulsey* v. *Rapid Transit St. Rwy. Co.*, 47 N. J. Equity, 380, Vice-Chancellor Van Fleet, in discussing the use of poles and wires in the operation of a city railway by electricity, says: "They form a part of the means by which a new power to be used in the place of animal power is to be supplied for the propulsion of street cars, and they have been placed in the street to facilitate its use as a public way, and thus add to its utility and convenience    *    *    * The whole matter may be summed up in a single sentence: the poles and wires have been placed in the street to aid the public in exercising their right of free passage over the street. That being so, it seems to me to be clear beyond question that the poles and wires do not impose a new burden upon the land, but must, on the contrary, be regarded both in law and reason as legitimate accessions to the use of the land for the very purposes for which it was acquired. They are to be used for the propulsion of street cars, and the right of the public to use the streets by means of street cars, without making compensation to the owners of the naked fee in the street, is now so thoroughly settled as to be no longer open to debate. It would seem, then, to be entirely certain that the occupation of the street by poles and wires takes nothing from the complainant which the law reserved to the original proprietor when the public easement was acquired."

The test applied in all the cases we have been able to examine is whether or not the proposed use of the street can be said to be in pursuance of the original purposes contem-

plated in laying it out as a highway.    Hence it was said by
Gaines, C. J., Supreme Court of Texas, in *Limburger* v. *San
Antonia Rapid St. Ry. Co.*, 30 S. W. 533: "A street may
be older than the omnibus or the hansom-cab, and yet who
would deny the right of the drivers of such conveyances to
use it."

In that case it was held that the proper construction and
operation of an electric railway on a street where there were
already two other such railways, and so near an abutting
store building as to inconvenience the occupants in receiving
and delivering goods, is not such an infringement on the right
of access to such building as to entitle the owner thereof to
damages based on the consequent depreciation of the value of
the property; and that the principle is that the original pur-
poses for which the street was dedicated embrace the opera-
tions of a street railway, and that if the owner of the adjacant
property suffer a loss by reason of such operation, it is
*damnum absque injuria.*

The authorities, both the adjudicated cases and text writers,
so far as we have been able to examine them, overwhelmingly
maintain that, so long as a street is used or proposed to be
used under legislative and municipal authority for purposes
only for which it may be reasonably said to have been dedi-
cated or acquired, its use, or proposed use, cannot be enjoined,
as such use adds no additional servitude or burden to the land
for which the abutting owners are entitled to compensation.

Accordingly it was held by this court in *Home Building
& Conveyance Co.* v. *City of Roanoke*, 91 Va. 32, that: "The
building of an approach to an elevated bridge in the streets
of a city, leaving a space of about seven and one-half feet on
each side, for the convenience of the public or adjacent own-
ers, when there is no actual encroachment on the property of
the abutting land owner, does not create any additional servi-
tude on the land, and is not a 'taking' of private property,
within the meaning of Article 5, sec. 14, of the Constitution

of Virginia, though the use of the property may be thus impaired. The resulting damage, if any, is *damnum absque injuria.* And it is immaterial whether the fee in the street is in the city, the State, or the abutting land owner.''

We do not, however, mean to say that a street railway may not be so constructed and operared as to create a new servitude upon the street or burden upon the land, or cause injury to property rights, which would entitle the abutting owners to compensation, or to damages for the injury, but such a case is not made by appellants' bill.

Being of opinion, therefore, that the construction and operation, under legislative and municipal authority, of an electric street railway is not an additional servitude upon a street, for which the abutting lot owners are entitled to compensation, and that *a fortiori* the conversion of an existing single track horse-car railway into a double track electric railway is not, the decree of the court below dismissing the bill of appellants is affirmed.

*Affirmed.*