# Richmond.

RICHMOND TRACTION COMPANY v. MURPHY.

FEBRUARY 8, 1900.

1. STREETS—*Railways—Abutting Owners—Damages—Benefits.*—The occupation of a street by an electric street railway is not generally one of those burdens for which an abutting lot owner is entitled to recover damages as compensation. Neither is the removal of such street railway a benefit to the abutting lot owners which may be set off against damages inflicted by the construction of a steam railway in front of such lots.

2. STREETS—*Railways—Abutting Owners—Consequential Damages.*—Ordinarily, the fee of the abutting lot owner extends to the center of the street, subject to the easement, and the construction and operation of a steam railway over that part of the street upon which his lot fronts is an additional burden for which the law provides compensation, but section 1093 of the Code was not intended to give an abutting owner the right to have estimated as an impairment to the value of his lot anything by reason of the location of the road beyond the limits of his premises.

3. CONDEMNATION PROCEEDINGS—*Commissioner's Report—Evidence.*—The report of the commissioner in condemnation proceedings, if no irregularity or illegality appears on its face, is *prima facie* evidence of the propriety and correctness of the award, and must be confirmed and carried into effect, unless good cause be shown against it.

Error to a judgment of the Hustings Court of the city of Richmond, rendered December 9, 1898, in a condemnation proceeding, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Amended and affirmed.*

The opinion states the case.

*Henry & Williams*, for the plaintiff in error.

*L. L. Lewis*, for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This proceeding was instituted in the Hustings Court for the city of Richmond to ascertain the damages sustained by the defendant in error, in consequence of a change in the location of the tracks of the Richmond, Fredericksburg and Potomac railroad, whereby they were brought nearer to his lot, situated on Broad street in said city.

This change was made in pursuance of authority granted by the City Council, in order that the plaintiff in error, an electric street-car company, might locate its tracks on Broad street. While putting the tracks of the Richmond, Fredericksburg and Potomac railroad nearer to the lot in question, the change involved the removal of the tracks of the Richmond Railway and Electric Company, another street-car company, farther from said lot than they had theretofore been located. The change in the location of the tracks being made for the benefit of the plaintiff in error, that company, before the work was done, undertook and agreed with the Richmond, Fredericksburg and Potomac Company to pay all damages that might result from the proposed change of the latter's tracks, and, by subsequent agreement of all parties, the work was proceeded with upon the understanding that the appointment of commissioners to assess the damages would be applied for after the change had been completed.

Accordingly, the parties not being able to agree upon the compensation, the plaintiff in error filed its petition setting forth the facts, and asking that five disinterested freeholders be appointed, as provided in section 1093 of the Code, and chapter 46, who should ascertain what would be a just compensation for the land of the defendant in error occupied by the Richmond,

Fredericksburg and Potomac Railroad Company, and for the damage to the residue of the lot beyond the peculiar benefits derived from the whole work.

The commissioners appointed, in pursuance of this petition, reported that in their judgment one dollar would be a just compensation, saying that in reaching their conclusion they had considered the changing of the street railway tracks and the steam railroad tracks as a whole. In other words, the commissioners were of opinion that the damage caused by the location of the steam railroad tracks was offset by the supposed benefit resulting from the removal of the street railway tracks to a greater distance from the lot ·than they were formerly located. The defendant in error excepted to this report upon two grounds; (1) that the sum awarded was inadequate; and (2) because the report was based upon incorrect principles. These exceptions were sustained, and other commissioners appointed to assess the damages.

We are of opinion that the exceptions were well taken. The work to be constructed, and the improvement for which condemnation proceedings were necessary, was the change, not in the street railway tracks, but in the Richmond, Fredericksburg and Potomac (steam) railroad tracks. It was not necessary that the abutting lot-owners should be consulted in regard to changing the street railway tracks, any more than their consent was necessary to those rails being originally laid in the street. This court has held in the case of *Reid* v. *Norfolk Railway Co.,* 94 Va. 117, that the occupation of a street by an electric street railway is not generally one of those burdens for which an abutting lot-owner is entitled to compensation or damages. The original purposes for which the street was dedicated embrace the operation of such a railway, so that if an abutting owner suffers damage or inconvenience by reason of such occupation, it is *damnum absque injuria.* This being so, it would seem to follow logically that the removal from a street of the tracks of such a

company is not in contemplation of law a benefit—certainly not such a benefit as would compel the lot-owner to pay therefor, by having the value offset against the just compensation due from a railroad company that had, under the law, no right to the location except upon the terms of condemning the same, and compensating for the damages resulting to the extent prescribed by law.

The second commission made a report fixing the damages at $2,000. They say that in reaching their conclusion they considered the value of the land taken and the damage to the residue of the tract, beyond the peculiar benefits to be derived in respect to such residue from the work constructed; and, in addition, included in their estimate the damage to the lot caused by the change of location of the tracks of the railroad for two squares east of the lot of the defendant in error, whereby the tracks were brought nearer to the pavement for that distance. The damage allowed for this change of location east of the lot in question the commissioners fix at $1,000, part of the total allowance of $2,000.

This report was excepted to by the plaintiff in error upon the following grounds: (1) Because the appointment of the commissioners was illegal; (2) because the commissioners failed to offset the damage ascertained with the benefit resulting from removing the street-car tracks; (3) because the commissioners included in their estimate $1,000 as damages sustained by reason of the change in the location of the railroad tracks for two squares east of the lot in question; and (4) because the amount allowed was, in any aspect of the case, excessive.

The first exception is without merit, and the second has already been disposed of in considering the exceptions taken by the defendant in error to the first report.

The third exception—namely, that it was error to allow damages for the change in the location of the railroad tracks for

two squares east of the lot in question—involves a construction of section 1093 of the Code.

In *James River & Kanawha Company* v. *Anderson*, 12 Leigh, 283, it was held, upon a construction of its charter, that the company had a right to enter upon and occupy the public streets of a town, as well and in like manner as the lands of individuals, and that this might be done before instituting proceedings to ascertain the damages for such entry and occupation. In consequence of this decision, the Legislature passed the following act:

"No company shall occupy with its works the street of any town until the corporate authorities of the town shall have assented to such occupation, unless such assent be dispensed with by special provision of law." Code 1849, ch. 56, sec. 23.

The revisors of the Code of 1849, in their note to this section, say that, although no objection is perceived to the decision in *James River & Kanawha Company* v. *Anderson* (the assent of the Common Council having been there given), yet as in the view of the judges the general power to take lands would authorize streets to be taken, they deem the clause suggested proper.

In the case cited, Judge Allen, further in his opinion, says that he is inclined to think that there is, and from necessity must be, a difference between streets in cities and towns and ordinary highways, and that the fee of the streets should be held to be in the city or town authorities. If this were so, then lot-owners would have no right to compensation for injury sustained by reason of a railroad establishing its right of way over the street in front of their premises, and it may be reasonably presumed that the Legislature had this intimation of opinion in view when it amended and re-enacted section 23 of the Code of 1849 by an act approved 15th of January, 1875 (Acts 1874-'5, p. 35), now carried into section 1093 of the Code of 1887. This section is in these words:

No company shall cross or occupy with its works the streets or alleys, public or private, of any city or town, without the assent of the corporate authorities thereof, unless such assent be dispensed with by special provision; and in case any lot or lots along the line of such streets or alleys shall, by such occupation or crossing, be impaired in value, such company shall, before crossing or occupying such streets or alleys, make compensation therefor to the owner of the same; said compensation, if the parties cannot agree upon the same, to be ascertained in the mode prescribed in this chapter.

The first part of this section, found, as we have already seen, in section 23 of the Code of 1849, protects cities and towns from invasion of their streets by railroads without the assent of the corporate authorities, while the latter part of the section, which was added by the act of 1875, protects the individual in his right to compensation for injury done to his lot by reason of such occupancy of the street. But, whatever may have moved the Legislature to enact the law now carried into section 1093 of the Code of 1887, we are of opinion that it was not intended to give an abutting lot-owner the right to have estimated as an impairment to the value of his lot anything by reason of the location of the road beyond the limits of his own premises. Ordinarily, the fee of the abutting lot-owner extends to the center of the street, subject to the easement. The construction and operation of a railroad over that part of the street upon which the lot fronts is an additional burden for which the law provides compensation. To hold that each abutting lot was impaired in value by reason of the location of the road beyond its limits, and that the owner was entitled to receive compensation therefor, would so multiply the damages to be paid as to amount to a denial of the right to construct the road. As said by Judge Tucker in *James River & Kanawha Company* v. *Anderson, supra:* " The property of the plaintiff Anderson lies in another square, to the eastward, and that of Mills two squares off. As well might a lot-owner at Rocketts complain of the narrowing of Main street on Shockoe Hill, and bring his private

action or bill for an injunction. Such remote injuries common to the whole population are to be remedied by the action of the constituted corporate authorities, or by prosecution for a nuisance."

Chapter 46 of the Code of 1887, which, under the express terms of section 1093, prescribes the mode by which the compensation provided for by that section is to be ascertained, makes no provision for the payment of consequential damages such as are claimed here. That chapter goes no further than to provide that the land-owner must be compensated for the land actually taken and for the damage, if any, to the residue of the tract.

We hold, therefore, that the third exception was well taken, and that the defendant in error was not entitled to the $1,000 allowed as compensation for impairment to the value of his lot by reason of the change in the location of the railroad tracks for two squares east of the lot in question. *Myer* v. *City of Richmond*, 172 U. S., page 82. In this case the construction of section 1093 was necessarily involved, and the question now under consideration, by the refusal of this court to grant the appeal in that case, was decided adversely to the view urged by the learned counsel for the defendant in error, which action was affirmed by the Supreme Court.

We are further of opinion that the fourth exception, that the amount allowed was, in any aspect of the case, excessive, was properly overruled.

The report of the commissioners, if no illegality or irregularity appear on its face, is *prima facie* evidence of the propriety and correctness of the award, and under the plain mandate, as well as the spirit of the statute, the report must be affirmed and carried into effect by the judgment of the court, unless, in the words of the statute, "good cause be shown against it." *Crawford* v. *Valley R. R. Co.*, 25 Gratt. 467. The plaintiff in error has suggested no irregularity or impropriety on the part of the commissioners, and has failed to show that the ascertain-

ment of $1,000 was excessive compensation for the land taken, and the damage to the residue of the tract, beyond the peculiar benefits to be derived in respect thereto from the work constructed.

For these reasons an order will be entered amending the judgment of the Hustings Court so as to reject the allowance of $1,000 as compensation for the injury alleged to have been sustained by reason of the change of the railroad tracks for two squares east of the lot of the defendant in error, and thus amended, said judgment will be affirmed.

*Amended and affirmed.*