IN THE

# SUPREME COURT OF APPEALS

OF

# VIRGINIA.

## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

BASS' ADMINISTRATOR v. NORFOLK RAILWAY & LIGHT CO.

December 5, 1901.

1. STREET RAILWAYS—*Unusual Speed—Negligence—Rights of Public.*—Unless unusual speed is expressly permitted by law, the speed of a street car ought to be no greater than is reasonable and consistent with the customary use of the street by the public with safety. Any speed in excess of that rate is, at least, evidence of negligence. The public have the same right to pass along an intersecting street crossing as the street car has to go across, and the latter should approach such crossings at such rate of speed as to be readily stopped.

2. STREET RAILWAYS—*Street Crossings—Negligence—Look and Listen.*—Failure to look and listen for an approaching street car by a person about to cross a street railway track at a street crossing, is not negligence as a matter of law. The test of due care, in such case, is to be determined by what a prudent man, acting prudently, would do under like circumstances. The same rule does not apply to a person crossing a railroad on a public highway.

3. STREET RAILWAYS—*Rights in Streets—Speed—Rights of Public.*—A street railway is not a highway. Its owner has no property interest in the street, and no right to use it for other purposes than those for which it was dedicated or condemned. He has the mere right to

| | |
|---|---|
| 100 | 1 |
| e101 | 387 |
| 101 | 389 |
| 100 | 1 |
| 102 | 673 |
| f102 | 921 |
| 100 | 1 |
| 103 | 104 |
| 100 | 1 |
| 104 | 643 |
| 105 | 518 |
| 100 | 1 |
| 108 | 599 |
| 108 | 607 |
| 108 | 690 |
| f108 | 763 |
| 100 | 1 |
| f109 | 167 |
| 100 | 1 |
| e110 | 707 |

use the street in common with the public, but no right to run his cars at a rate of speed that will interfere with the customary use of the street by the public with safety. Street cars are governed for the most part by the same rules which govern other vehicles on the street, and their owners have only an equal right with the travelling public to the use of the street. This is especially true at street crossings.

4. DEMURRER TO EVIDENCE—*Doubts.*—Where reasonably fair-minded men might differ about a question, such question must be decided against the demurrant, on a demurrer to the evidence.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk, rendered October 26, 1900, in an action of trespass on the case, wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Reversed.*

The opinion states the case.

*Thomas H. Willcox* and *Venable, Withers & Green,* for the plaintiff in error.

*Richard B. Tunstall,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This action was brought to recover damages for the death of the plaintiff's intestate, caused by the alleged negligence of the defendant in running one of its cars at the point where Colonial avenue crosses Olney road, in the city of Norfolk.

The deceased, on the evening of his death, was a passenger on a west-bound car of the defendant company, returning to his sister's home, on Colonial avenue, south of Olney road. The car was running on the northern track, and when it reached the eastern side of Colonial avenue it was stopped for the purpose of enabling the deceased to alight. He stepped from the car on the north side of its rear platform, walked around the end of the car, which was still standing at the crossing, passed over the

narrow space between the northern and southern tracks, going in the direction of his sister's home, and, without looking to the west, was crossing the southern track when he was struck by an east-bound car and killed. The east-bound car was running very rapidly; as fast, one witness testifies, as he ever saw a street car run, and so fast, according to the testimony of another witness, that its rapid movement attracted his attention. Its gong sounded four times at the Glennan house, 113 feet west of the point where the deceased was struck, but was not sounded after it reached Colonial avenue, which is eighty feet wide. The speed of the car was not checked, probably increased, as it approached the point where the west-bound car was standing, and it ran ninety-five feet after it struck the deceased before it was stopped. The distance between the northern and the southern tracks is from four to four and one-half feet. The sides of the cars extend over the wheels, so that when they pass each other on the tracks the distance between them is about one foot.

These are the facts as disclosed by the plaintiff's evidence, to which the defendant, offering no evidence of its own, demurred, and upon which the court rendered judgment in its favor.

The defendant denies that the evidence shows that it was guilty of negligence in the management of its car which struck the deceased.

The people of the city have the same right to pass along an intersecting street crossing as the street car has to go across. It was, therefore, the duty of the defendant not only to give notice or warning of the approach of its car, but as it neared the crossing, where its west-bound car had stopped to let off and take on passengers, to run at such a rate of speed as to have the car under control, and be able to stop it readily.

In *Richmond etc. Railway Co.* v. *Garthright*, 92 Va. 627 (where the motive power was electricity), it was held that it was gross negligence in a street railway company to so overcrowd and load down its cars with passengers, beyond any reasonable

or proper limit, as not to be able to stop them readily as thev approach intersecting streets in case it may be necessary to avoid a collision or prevent an accident.

Unless unusual speed is expressly permitted by law, and it is not claimed that there was any such permission in this case, the speed of a street car ought to be no greater than is reasonable and consistent with the customary use of the street by the public with safety. Any speed in excess of that rate is, at least, evidence of negligence. 2 Shear. & Red. on Neg., secs. 485a, 485b.

Conceding that the defendant gave proper warning or notice of the approach of its car, it is clear that the car was running at an excessive rate of speed, under the facts of this case, when it struck the deceased, and that a jury might have found that the defendant was guilty of negligence in the management of its car at that point; and, if so, upon a demurrer to evidence, the court was bound to so hold.

The defendant's main contention is, however, that even if the court be of opinion that the evidence shows that it was guilty of negligence, still the plaintiff was not entitled to recover because the failure of his intestate to look for approaching cars before going upon the track of the defendant was negligence, as a matter of law, and bars a recovery.

The authorities are in conflict upon this question, some holding that such failure to look is *per se* negligence, and others denying it, and holding that it is a question for the jury upon all the facts and circumstances of the case.

It is the duty of a traveller in approaching a railroad crossing over a highway to look both ways for approaching trains before attempting to cross the railroad track, and a failure to do so is generally held to be negligence as a matter of law. *Washington etc. Ry. Co.* v. *Lacy,* 94 Va. 460; *Kimball & Fink* v. *Friend,* 95 Va. 125; *Bryant* v. *Southern Ry. Co.,* 95 Va. 212.

The defendant insists that the same rule is applicable in crossing the track of a street railway at a street crossing in a city.

This we do not think is true. The cases are quite different. In the first place, the cars of a street railway have not the same right to the use of the tracks over which they travel. The steam railroad is itself a highway, and the company has a property interest in and to its right of way (with us, usually the fee) even where the public have an easement for highway purposes over the same land. A street railway is not a highway. A street railway company has no property interest in the street. It has the mere right to use it in common with the public generally. It has no right to use the street for other or different purposes than those for which it was dedicated or condemned, and because its use by the street cars is not a new and independent one, but merely in aid of the identical use for which the street was laid out, the owners of street cars are not required to pay compensation to the abutting land-owners for its use. *Reid Bros.* v. *Norfolk etc. Ry. Co.*, 94 Va. 117, 125.

An ordinary railroad company acquires by purchase or condemnation a right to run its tracks over the lands crossed by the highway, and so burdens it with an additional servitude. By legislative authority it uses the right thus acquired in the passage of trains at great speed, and to a certain extent, and from the very necessity of the case, the public easement is at such crossing modified.

A street railway company not only has no property interest in the street, but it has no authority or right to run its cars at a rate of speed which will interfere with the customary use of the street by others of the public with safety. Its cars do not—at least, they have no right at street crossings to—run at the same high rate of speed as the ordinary railroad trains. Their running is not attended with the same degree of danger, and they can be much more quickly stopped than the trains of an ordinary railroad.

Street cars are for the most part governed by the same rules which govern other vehicles on the streets, and their owners

have only an equal right with the travelling public to use the street. To this general rule there are some modifications or exceptions from the necessity of the situation. For example, a street car is not governed by "the law of the road," as it is sometimes called, since it cannot leave its track and turn aside. But it is settled law that at street crossings it has only the same rights as the travelling public. "The people of the city," said Judge Riely, speaking for the court in *Richmond, &c.,* v. *Garthright,* 92 Va. 627, "have the same right to pass along an intersecting street on foot or in vehicles as a street car has to go across. . . . Neither has a superior right to the other. . . ."

These considerations furnish a solid foundation why there should be a difference in the degree of care required in such cases. To impose the same obligation upon persons crossing the tracks of a street railway as that which obtains where they cross an ordinary railroad track would be practically to surrender the street to the railway company, and destroy that equality of right which belongs to the travelling public.

Failure to look for approaching street cars by a person about to cross a street railway track at a street crossing, ought not, we think, upon principle, be held to be negligence as a matter of law. The authorities upon this question, as before stated, are conflicting, but the conclusion we have reached is sustained by some of the ablest of our text-writers, and by many, if not by a majority, of the decided cases.

The rule as to what will constitute contributory negligence, say Sherman and Redfield in discussing this question, where street cars are concerned, is, in some respects, quite different from those which are applied to steam railroads running on their own land. . . . . Travellers may walk, ride, or drive either across or along the track, just as freely as upon any other part of the street, so long as they do not obstruct the cars or rashly expose themselves to danger. . . . And while, generally speaking, one who is about to cross a street railway should

both look and listen for cars, this is not an inflexible rule; nor
is it to be enforced with any such strictness as in cases of an or-
dinary steam railroad. It is not negligence as a matter of law to
omit to do so. The question is whether a prudent man, acting
prudently, would have thought it unnecessary to do so. See
*Robbins* v. *Springfield etc. Ry.*, 165 Mass. 30, 36; *Moebus* v.
*Herrmann*, 108 N. Y. 349; *Shea* v. *St. Paul etc. Ry. Co.*, 50
Minn. 395; *Newark etc. Ry. Co.* v. *Block*, 55 N. J. L. 605, 610,
&c.; *Chicago etc. Ry. Co.* v. *Robinson* (Ill.), 4 L. R. A. 126;
*Cinn. etc. Ry. Co.* v. *Snell* (Ohio), 32 Do. 276; *Smith* v. *Union
Trunk Line* (Wash.), 45 Do. 169, 173; *Driscoll* v. *Market etc.
Co.* (Cal.), 32 Pac. Rep. 588, 590; *Atlanta etc. Ry. Co.* v. *Bates*,
103 Ga. 333.

The case of *Richmond Traction Company* v. *Hildebrand*, 99
Va. 48, does not, we think, sustain the defendant's contention
that the plaintiff's intestate was guilty of negligence *per se*. The
opinion of the court in every case must be read in the light of the
facts of that case. The person injured in that case was not at
a street crossing, but was travelling along the public highway,
in the county, upon which the defendant company had laid its
tracks. The declaration averred that she was injured by a car
running at a high rate of speed "while she was then and there
walking upon the tracks and road-bed of the said defendant
company constructed on such street, road, highway and avenue,
upon which she had just stepped in order to avoid a certain other
car of the said defendant company going in the opposite direc-
tion from which the plaintiff was travelling at the time."
.   .   .   The declaration was held bad on demurrer because,
construing the declaration most strongly against the pleader, it
was held to mean that the collision which caused the injury was
simultaneous with the act of the plaintiff in stepping upon the
track.                                                          *i*

In this case the defendant had stopped its car at the crossing
for the plaintiff's intestate to get off. That car obstructed the

view of the approaching car to a greater or less degree. The deceased had the right to presume that the defendant would not only give proper signals of the approach of its car, but would not propel it at an excessive rate of speed, especially at a point where it had stopped its car to let off persons, some of whom it might reasonably expect would have to cross its track in order to get to their destination. The evidence does not show that the deceased, who was a stranger in the city, had knowledge of the manner in which the defendant ran its cars at that point, or that there was an east-bound car to pass over this crossing at the very time passengers were being discharged from the west-bound car.

Whether or not the plaintiff's intestate, under all the facts and circumstances of this case, was guilty of contributory negligence is a question about which reasonably fair-minded men might differ. The inferences to be drawn from the evidence must be certain and incontrovertible, or they cannot be decided by the court. It was, therefore, a question for the jury. *Carrington* v. *Ficklin*, 32 Gratt. 670, 676-7; *Kimball & Fink* v. *Friend*, 95 Va. 125, 140, &c. And since the jury might have found for the plaintiff on the question of contributory negligence of the plaintiff's intestate, on the defendant's demurrer to the evidence, the court must so find.

The judgment complained of must, therefore, be reversed and set aside, and this court will give such judgment as the Court of Law and Chancery ought to have given.

*Reversed.*