## Staunton.

### Wagner v. Bristol Belt Line Railway Co.

September 10, 1908.

Absent, Keith, P.

1. Municipal Corporations — *Discretionary Powers — Interference by Courts—Street Railways.*—If a city has power, under its charter, "to permit street car lines to be built and to determine and designate the route and grade thereof" it may, when acting in good faith, and not arbitrarily or capriciously, direct the track to be laid on the side of the street instead of in the center; and it is not competent for the courts to interfere with the legislative acts of the city when acting within its charter powers. This power of the city is not limited by the new Constitution, nor has it been modified by sec. 1294-i of the Code (1904) relating to the laying of street car tracks.

2. Streets—*Electric Railways—Additional Servitudes—"Damaged."*—The construction of an electric street car line in a street does not impose an additional servitude on the land occupied by the street, and abutting owners are not entitled to damages by reason of its location in the street. This rule is not affected by the damage clause of the Constitution.

3. Streets—*Electric Railway—Location—Additional Servitude.*—Whether an additional servitude has been added to the street, or an abutting owner is entitled to compensation or to damages for an injury, cannot be determined from the mere fact that an electric car line is proposed to be laid on the side of the street instead of in the center thereof.

4. Streets—*Abutting Owners—Standing Vehicles in Street.*—An abutting owner's rights are not violated simply because a street car line runs so near the curbing next to his property that a vehicle cannot stand between the track and the curbing while a car is passing. He has the right to pass and repass, and also to free access to his property, but he has no right to stand vehicles on the street an unreasonable length of time where it would impede travel over the street by those who have the right to use it.

5. STREETS—*Street Car Tracks—Location—Damages to Abutting Owner.*
An abutting owner is not entitled to damages merely because his
property is made less desirable and less comfortable as a residence
by reason of the fact that a street car track is laid on the side of
the street next to his residence instead of in the center of the
street.  When the acts complained of amount simply to an incon-
venience or discomfort of the occupants of the property, but the
property itself does not suffer any diminution in substance, and is
not rendered intrinsically less valuable by reason of the public use
there can be no recovery.  The property is not damaged within the
meaning of the Constitution.

Appeal from a decree of the Circuit Court of Washington
county.  Decree for defendants.  Complainant appeals.

*Affirmed.*

The opinion states the case.

*Roberts & Roberts,* for the appellant.

*Bullitt & Kelly, Paul Dulaney, Phlegar & Powell* and *J. C.
Byars,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

The council of the city of Bristol, Virginia, pursuant to
authority conferred by its charter—sec. 49, Acts 1889-90, p.
635—granted, on June 19, 1907, to the Bristol Belt Line Rail-
way Co. a franchise to build, equip and operate a street railway,
using electricity, over and along the streets of the city, includ-
ing Moore street, this franchise providing that the streets occu-
pied by the railway shall be put in as good condition after con-
struction of the tracks as before; that the railway company shall
keep in good repair the streets occupied by its track for three
and one-half feet on each side of the center line thereof, and
shall keep the same flush with the street; and that, if the city
should thereafter pave or macadamize any of the streets so
occupied, the railway company shall in like manner pave and

macadamize that portion occupied by its tracks, measuring three and one-half feet from the center line thereof on either side. The line of railway was to be constructed under the supervision of the street committee chosen by the council, and the street committee directed the railway company to locate its track in Moore street, on the east side thereof, flush with the surface of the street, and that it be "maintained so as not to unreasonably impede travel or the passage of vehicles." The railway company was proceeding to so construct its track in Moore street, as authorized, when R. F. Wagner, who owns three lots abutting on the east line of Moore street, gave a notice to the railway company and the city, requesting and notifying them to place the track of the car line in the middle of Moore street, and stating that the building of the track on the east side of the street would impede his, Wagner's, right of ingress and egress, and would damage his property considerably, further stating that if his request was not granted he would apply for an injunction to protect his rights.

On the 9th of August, 1907, at a meeting of the council of the city, after a number of the members of the council had viewed that portion of Moore street upon which the railway track was proposed to be laid, a resolution was adopted, reciting that it appeared to the satisfaction of the council that the construction of the railway track on the east side of Moore street would be less inconvenient and dangerous to public travel than the construction thereof in the center of the street, approving and ratifying the action of the street committee, and directing the railway company to locate its track accordingly, the east rail thereof to be placed six feet from the curb of the sidewalk, and the street between the rails and one and one-half feet on each side thereof to be continuously kept in good repair by the railway company so as to permit easy passage therefor. Whereupon, Wagner filed his bill in the Circuit Court of Washington county and obtained a temporary injunction restraining the railway company from placing its track line on

the east side of Moore street, which injunction, after a hearing, was, by decree entered August 16, 1907, dissolved; and from that decree Wagner obtained this appeal.

The section of the charter of the city of Bristol, *supra,* gives to the council of the city the power "to permit street car lines to be built, and to determine and designate the route and grade thereof."

In the petition for this appeal, it is conceded that the city, before the enactment of section 1294-i, cl. (3), of the Code of 1904, had the power to regulate and control its streets, and that this power was subject to only one limitation—that the city must act in good faith, and that the regulation must be reasonable and not imposed arbitrarily or capriciously; but the contention is made that, as the city itself is not building the electric car line in Moore street, but the railway company proposes to do so, the latter derives its power to build and operate the proposed line from the statute just mentioned, and as that statute provides that "such * * * tracks, etc., * * * shall not, in any wise, unnecessarily obstruct or interfere with the use of the same (street) or public travel over the same, or damage property, without compensation," therefore the prior rule of law has been modified, and although the railway company had obtained the required franchise from the city and proposed to build its track line under the supervision of the city authorities, and the city authorities had located the track at the point complained of, under a proper interpretation of the statute if this car line unnecessarily obstructs or interferes with appellant's use of the street, he has the right to have the same located so as not to do so, since the words in the statute, "shall not in any wise unnecessarily obstruct or interfere with the use of the same," refer to the use of the street by the abutting owners, and the words, "or public travel over the same," refer to the use of the street by the public. No allegation of bad faith or arbitrary or capricious conduct appears in the bill of appellant: the allegation he relies on being that the location

of the railway is unreasonable, and will unnecessarily and unreasonably interfere with his right of ingress and egress. In other words, as said by the learned judge below in his written opinion, made a part of the record, the contention of appellant is that the judgment of the city council was bad in locating the railway line on the side of Moore street.

The power conferred by the charter of the city to permit street car lines to be built and to determine and designate the route and grade thereof is not dissimilar to that conferred by the general law, and we are unable to appreciate the force of the contention, that this power in the city to control and manage its streets, is limited by the new Constitution; nor do we assent to the view that the law conferring the power, in so far as street car lines are concerned, has been modified by section 1294-i of the Code, *supra.*

Have the courts the power to interfere with the judgment of the council of a city in a case such as is made by appellant's bill and proof is the first question for our determination.

It has been repeatedly decided by this court, and well recognized by text-writers and in the decided cases in other jurisdictions as the settled law, that courts can interfere only to prevent a fraudulent or manifestly abusive or oppressive exercise of the powers conferred upon the council of a city by its charter or the general law, since the discretion of municipal corporations, within the sphere of their powers, is as wide as that possessed by the government of a State. "This discretion is to be exercised according to the judgment of the corporation as to the necessity or expediency of any given measure. The general assembly is a co-ordinate branch of the government, and so is the law-making power of a municipal corporation, within the prescribed limits, and it is no more competent for the judiciary to interfere with the legislative acts of the one than the other." *Roanoke Gas Co.* v. *City of Roanoke,* 88 Va. 812-813, 14 S. E. 665; *Newport News Elec. Co.* v. *Hampton, &c.,* 102 Va. 802, 47 S. E. 839; 1 Dillon on Mun. Cor., secs.

94, 308, and notes to last-named section.   See also, 7 Rapalje & Mack's Dig. of Ry. Law, 420; Cooley on Con. Lim. (96th ed.), 252.

Coming then to the remaining question in the case, viz.: If appellant is damaged within the contemplation of the present constitutional provision (sec. 58, art. iv), is the city of Bristol or the railway company liable to pay appellant such damages before the proposed line of railway is constructed?

The allegations of the bill, of injury to or invasion of the property rights of appellant, are, (1) that an additional servitude is imposed upon the land occupied by the street; (2) that ingress and egress are unreasonably interfered with; and (3) that appellant's property will be made less desirable and less comfortable as a residence.

That the first allegation has been decided adversely to the contention of appellant, we need only refer to the cases of *Reed Bros.* v. *Norfolk City R. Co.,* 94 Va. 117-125, 26 S. E. 428, 64 Am. St. Rep. 708, 36 L. R. A. 274; *Bass* v. *Norfolk, &c. Ry. Co.,* 100 Va. 1, 40 S. E. 100; *Richmond Traction Co.* v. *Murphy,* 98 Va. 106, 34 S. E. 982; *Western Ry. of Ala.* v. *A. G. T. R. Co.,* 99 Ala. 272, 11 South. 483, 17 L. R. A. 477, and note; Dillon on Mun. Corp. (4th ed.), sec. 725; Joyce on Elec. L. (2nd ed.), sec. 335; 27 A. & E. Ency. L., p. 27.

It is conceded by counsel for appellant that such was the law and may yet be, as a general rule; but it is contended that the new Constitution has altered the rule by inserting the clause (sec. 58, art. iv, of the present Constitution), that the general assembly "shall not make any law whereby private property shall be taken *or damaged* for public uses, without just compensation," the change wrought being by adding to the provision of the old Constitution the words, *"or damaged."*

The theory of the established rule, that an electric railway operated on a public street adds no additional burden to the street, entitling the abutting lot owners to damages, is predicated of the reasoning that the streets are acquired for the pur-

pose of free passage or travel, not merely by the means in vogue at the time of the dedication, or taking, but by such new means as the necessities of the age and the community may require. Joyce on Elec. L., sec. 341; *Reed Bros.* v. *Norfolk, &c., supra;* *Bass* v. *Norfolk, &c., supra.*

In this case, appellant does not deny the right of the city to the use of Moore street for all the purposes for which a street may be lawfully used as the necessities of the age and the community may require, but rests his claim of right to damages as an abutting owner, and to enjoin the city and the railway company from locating the proposed car line in Moore street until the damages he claims are paid, solely upon the ground that the railway track is proposed to be on the side of the street next to the property of appellant instead of in the middle of the street. He, as seems also to be conceded, conveyed to the city the fee-simple title to the land in Moore street from its center to the east line of the street abutting on his property; but whether he made such a conveyance or the city acquired this space for street purposes by condemnation, appellant is presumed to have been compensated therefor, and for all the servitudes to which the street was liable, when the city acquired the land, and, having been paid for the same once, he could not claim damages again for having parted with the control of the land. This is the reasoning for the rule sanctioned in the Virginia cases cited above, and in innumerable cases decided by the courts of other· States as well as the federal courts. In Pennsylvania, California, Missouri, Texas, Kentucky, Indiana, Illinois, Arkansas, Georgia, Maine, Maryland and Mississippi, each having a constitutional provision similar to sec. 58 of art. iv. of our new Constitution, the courts adhere to the rule, that a street car line is no additional servitude, and that one who abuts is entitled to no damages by reason of its location in the street. Among the cases referred to are, *Rafferty* v. *Cen. Trac. Co.,* 147 Pa. St. 579, 23 Atl. 884, 30 Am. St. 763; *Finch* v. *Riverside, &c. R. Co.,* 87 Cal. 597, 25 Pac. 765, 46 A. & E. R. Cas.

107; *Montgomery* v. *Santa, &c. R. Co.,* 104 Cal. 186, 37 Pac. 786, 25 L. R. A. 654, 43 Am. St. Rep. 89; *Nagle, &c.* v. *Lindell R. Co.,* 167 Mo. 89, 66 S. W. 1090, 24 A. & E. R. Cas. (N. S.) 691; *Gaus* v. *St. Louis, &c. R. Co.,* 113 Mo. 308, 20 S. W. 658, 18 L. R. A. 339, 35 Am. St. Rep. 706; *San Antonio, &c.* v. *Limburger,* 88 Tex. 79, 53 Am. St. Rep. 730; *Georgetown, &c.* v. *Mulholland* (Ky., 1903), 76 S. W. 148, 31 A. & E. R. Cas. (N. S.) 871; *Doan* v. *Lake &c. R. Co.,* 165 Ill. 510, 46 N. E. 520, 56 Am. St. Rep. 265, 36 L. R. A. 97; *So. Ry. Co.* v. *Atlanta, &c. Co.,* 111 Ga. 679, 36 S. E. 873, 51 L. R. A. 125, 18 A. & E. R. Cas. (N. S.) 425; *Rosenbaum, &c.* v. *Meridian, &c. Co.,* (Miss., 1905), 38 South. 321; *St. Paul M. & M. Co.* v. *West. Union Tel. Co.* (C. C.), 106 Fed. Rep. 243, and note.

In *Gaus, &c.* v. *St. Louis & R. Co., supra,* the tracks were laid so close to an abutting owner's property as not to permit wagons to stand between the tracks and the property, yet it was expressly held not to come under the damage clause of the Constitution.

"The convenience and advantage of all the inhabitants of the city, and of the public at large, must be regarded as the objects contemplated when the street was laid out or opened. A narrower construction would require a sacrifice of the greater interest of the community and the public to the inferior and subordinate claims of the local lot owner. Such a construction of the law governing the dedication of public streets and the reserved rights of the original land owner and his assigns in the street by unreasonably increasing the cost of rights of way or use would obstruct all progress and deprive the local community of the benefit to be derived from the advancements of science, invention and discovery." *Mordhurst* v. *Fort Wayne, &c. Co.* (Ind., 1904), 163 Ind. 268, 71 N. E. 642, 66 L. R. A. 105, 106 Am. St. Rep. 222, and note by Freeman, p. 243.

In *Richmond Traction Co.* v. *Murphy, supra,* the opinion says: "It was not necessary that the abutting lot owners should be consulted in regard to changing the street railway tracks,

any more than their consent was necessary to those rails being originally laid in the streets."

True, this court, in *Reed Bros.* v. *Norfolk City Ry. Co., supra,* declared that it did not mean to say that a street railway might not be so constructed and operated as to create a new servitude upon the street or burden upon the land, or cause injury to property rights, which would entitle the abutting owners to compensation, or to damages for the injury; but no such case is made by appellant here. Whether an additional servitude has been added to the street, or whether an abutting owner is entitled to compensation or to damages for an injury, cannot be determined from the mere fact that the track of an electric car line is proposed to be laid on the side of the street instead of in the center thereof.

Here, every precaution has been taken by the council of the city that the railway company in laying its track in Moore street shall not unreasonably impede or interfere with the passage of vehicles, and shall keep the same in good repair so as to permit easy passage thereover. The allegations with respect to obstruction to access to appellant's property are but conclusions based upon no facts stated, and how a street railway track, six feet from the curb, flush with the surface of the street, and "maintained so as not to unreasonably impede travel or the passage of vehicles," can unlawfully, or unreasonably, or at all interfere with access to lots abutting on the street with four feet of granolithic pavement between the track and the abutting lots is not made to appear and is not easily to be conjectured. The entire width of the street is acquired for street purposes for all time—*Halsey* v. *Rapid, &c. Co.,* 47 N. J. Eq. 380, 20 Atl. 859, 46 A. & E. R. Cas. 76—and if the abutting lot owner is not damaged by the construction and operation of an electric car line in the middle of the street, surely the rule cannot be affected by the mere matter of inches or feet.

The suggestion that, because a vehicle could not stand between the track and the curb while a car is passing, the appel-

lant's rights will be violated, is without merit.    While appellant has, unquestionably, the right to occupy the street in front of his property, to take away or deliver persons or goods, he may occupy the street for such purposes a reasonable length of time, and that right the street railway company must accord to him, and both must recognize that streets are established for the purpose of facilitating the passage of persons from one part of the city to another, and not for the standing of vehicles or storage of goods thereon.    See authorities above cited, and Elliott on Roads & Streets, secs. 716-717, 848.

In a note to *Ashland, &c. Ry. Co.* v. *Faulkner* (Ky.), 43 L. R. A. 557, it is said: "So, while the abutting owners have an easement in a street, in common with the whole people, to pass and repass, and also to have free access to their premises, the mere inconvenience of such, occasioned by placing a street car track so near the sidewalk as not to leave sufficient space for a vehicle to stand, is not the subject of an action.

"So, a street railway, one of the tracks of which was in such close proximity to the sidewalk in front of the premises of an abutting owner as to interfere with, impede and prevent his complete enjoyment of the use and occupation thereof, leaving insufficient space between the sidewalk and the track to admit of every kind of vehicle to be driven or to remain in front of his premises, is not for that reason a public nuisance where the title to the street is vested in the city, but the injuries are referable to that class of disadvantages to which one is subjected resulting from the lawful exercise of the absolute power of control vested in the State in connection with the title to the fee of the land."

In *Rafferty* v. *Gen. Trac. Co., supra,* it was held, that the right of an abutting owner to the use of the street is the same, after the tracks are laid thereon and the cars running, as it was before.   If at any time he has occasion for the presence of vehicles on the street in front of his property, to take away or deliver persons or goods, he may exercise that right for such

reasonable time as is necessary for his purpose; and if in such exercise of the right the passage of street cars is impeded, they must wait.   See also *Killinger* v. *Forty-second St. & G. St. Ferry R. Co.,* 50 N. Y. 206.

Where there is shown to be a physical invasion of an abutting land owner's premises by dirt and dust, which injure the walls and furniture of his house and the health of himself and family, and other acts which amount to a public nuisance, as was the complaint dealt with on demurrer in *Campbell* v. *Metropolitan St. R. Co.* (Ga.), 9 S. E. 1078, so much relied on for appellant, the land owner would have a right of action against the wrong-doer for the damages so done him; but the reasoning of that case does not apply here, and in fact is authority for the proposition that the land owner could not recover damages if the acts complained of amounted simply to an inconvenience or discomfort of the occupants of the property.   In that case the street car track was 13 inches from the curb, yet the opinion of the court, at p. 1080, says, that "if the railroad company had permission from the legislature and the city council, it could lay its track in the street *anywhere* in *its* opinion it was for the best interest of the company to lay it."

Nor is the case of *Swift* v. *Newport News,* 105 Va. 108, 52 S. E. 821, 3 L. R. A. (N. S.) 404, also invoked for appellant, at all in point.   There, and in all similar cases growing out of a change in the grade of a street, the city had established a grade which was contemplated when the land was acquired, and which the lot owner had a right to believe was what it intended to maintain, and to which he had accommodated his premises in the location of his house, fences, pavements, etc.   The wide distinction between the using of a public street as a passageway for the public and the changing of the physical condition of the street itself is always to be observed; and also the equally wide distinction between the occupation and use of a street by steam railroads, as in the case of *Tidewater, &c. Co.* v. *Shartzer,* 107 Va. 562, 59 S. E. 407, 1 Va. App. 582, and its use by a street

railway; for the obvious reason that, when the land for the street was acquired by the municipality, its occupation and use by a steam railroad *was not* in contemplation, while in the other case it is to be presumed that when the land was acquired by condemnation, dedication or grant, for street purposes, *it was* contemplated that the street at grade would be used by all classes of vehicles, including the street car, to facilitate the passage of persons from one part of the city to another.

The question raised by appellant, as to whether or not he is entitled to damages because by reason of the proposed location of the railway track in Moore street, as authorized, his property will be made less desirable and less comfortable as a residence, has been decided adversely to appellant in the cases of *Tidewater, &c. Ry. Co.* v. *Shartzer, supra,* and *Campbell* v. *Met. Ry. Co., supra,* cited for him. Both dealt with the question of an original taking. The first involved the right of an abutting lot owner to damages resulting from the occupation and use of the street by a steam railroad, and the latter the question of damages incident to an original taking. Neither affect the question of the public's right to use in a legitimate manner that which it has acquired the right to use, and for which the abutting land owner is conclusively presumed to have been already fully compensated.

With respect to the last-named case, we consider it only necessary to say, in addition to what has already been said, that if the proposition of law there laid down is as broad as counsel for appellant contends (to which we do not agree), it is unsupported by the great weight of authority, and therefore out of accord with the well-established principles governing such cases.

In *Tidewater Ry. Co.* v. *Shartzer, supra,* the opinion by Keith, P., sets out in full sec. 236 of Lewis' work on Em. Dom., where that learned author quotes with approval the following from the opinion by the Supreme Court of California, in *Eachus* v. *Los Angeles Consol. El. R. Co.*: "The Constitution

does not, however, authorize a remedy for every diminution of the value of property caused by a public improvement. The damage for which compensation is to be made is a damage to the property itself, and does not include a mere infringement of the owner's personal pleasure or enjoyment. Merely rendering private property less desirable for certain purposes, or even causing personal annoyance or discomfort in its use, will not constitute the damage contemplated by the Constitution; but the property itself must suffer some diminution in substance, or be rendered intrinsically less valuable, by reason of the public use. The erection of a county jail or a county hospital may impair the comfort or pleasure of the residents in that vicinity, and to that extent renders the property less desirable, and even less salable; but this is not an injury to the property itself, so much as an influence affecting its use for certain purposes. But whenever the enjoyment by the plaintiff of some right in reference to his property is interfered with, and thereby the property itself is made intrinsically less valuable, he has suffered a damage for which he is entitled to compensation."

"A recovery has not been allowed in any case, unless there was some physical injury to the plaintiff's property, or, by noise, smoke, gases, vibrations or otherwise, an interference with the street in front of his property, or with some right appurtenant thereto, or which he was entitled to make use of in connection with his property. On the other hand, several cases have held that mere depreciation, caused by the proximity of a public improvement, afforded no ground for redress." Lewis on Em. Dom., sec. 236.

The gravamen of appellant's complaint is that, by the location merely of the railway track on the side of Moore street, instead of in the center thereof, his ingress and egress will be unreasonably interfered with and his property made less desirable and less comfortable as a residence.

The railway track being laid flush with the ground at grade, and constructed so that vehicles can cross the same and far enough from the sidewalk to preclude any claim that the latter

is damaged, or that the right of ingress or egress by foot passengers is interfered with, or carriages or other vehicles prevented by the presence of the railway track from driving up to the curb of the street in front of appellant's property, he has the same ingress and egress he had before, the right of the railway company, as a matter of law, being limited to the use of the street at grade in common with other vehicles. The latter has no greater or less right to the use of Moore street than has appellant or the public generally.

"A street railway has no property interest in the street. It has the mere right to use it in common with the public generally. It has no right to use it for other or different purposes than those for which it was dedicated or condemned, and because its use by the street cars is not a new and independent one, but merely in aid of the identical use for which the street was laid out, the owners of street cars are not required to pay compensation to abutting owners for its use." *Bass* v. *Norfolk, &c. Co., supra; Watson* v. *Fairmount, &c.,* 49 W. Va. 528, 39 S. E. 193.

It is true appellant produced in support of his bill several *pro forma* affidavits of certain persons, to the effect that in their opinion the reasonable location of the car line would be in the middle of the street, and that appellant's property is damaged by reason of the laying of the car track on the side of the street next to his property; but, as said by the court in *Rafferty* v. *Central Tr. Co., supra,* "such statements are matters of opinion only, fortified by no actual facts."

A number of other cases are cited by the learned counsel in support of appellant's contentions, but as they, in our view, are either out of harmony with the great weight of authority controlling the issues involved here, or deal only with the right of steam railways to use streets, and therefore not in point, it is deemed unnecessary to review them.

We are of opinion that there is no error in the decree of the circuit court complained of, and it is affirmed.

*Affirmed.*