Syllabus.

## Richmond.

TIDEWATER RAILWAY CO. v. SHARTZER.

November 21, 1907.

Absent, Buchanan, J.

1. EMINENT DOMAIN—*Property "Damaged"—Constitutional Provision—Legislative Power.*—Under a constitutional provision forbidding the Legislature to pass any law whereby private property may be taken "or damaged," without just compensation, the Legislature has full power to require any company exercising the power of eminent domain to make compensation to any person whose property is damaged by the proposed improvement, whether any portion of the property is actually taken or not. The Legislature has full legislative power, except so far as restrained by the constitution expressly, or by necessary implication.

2. EMINENT DOMAIN—*What Constitutes "Damage."*—The constitutional inhibition against taking or damaging private property for a public use without making just compensation therefor, and the statute passed in pursuance thereof, embrace and give a remedy for every physical injury to property, whether by noise, smoke, gases, vibration or otherwise, and every case where there is a direct physical obstruction or injury to the right of user or enjoyment of private property, causing special pecuniary damage to the owner, for which an action would lie at common law. There need be no physical invasion of the owner's real property, but the owner may recover if the construction and operation of the improvement would amount to a private nuisance at common law, or is the cause of substantial damage, though consequential.

3. EMINENT DOMAIN—*"Damage" by Smoke, Noise, Etc., of Railroads.*—Where the use and operation of a railroad will depreciate the market value of property by reason of the smoke, noise, dust and cinders arising from the ordinary and lawful operation of the road, the property is "damaged" within the meaning of the constitution and the statute passed in pursuance thereof, and the owner of such property is entitled to compensation.

4. EMINENT DOMAIN—*"Damage"* to Property—*Multiplicity of Claims.*—
The fact that the constitutional guaranty of compensation for prop-
erty "damaged" will give rise to an infinite number of claims, is no
valid objection to its enforcement. The right to compensation is co-
extensive with the damage or injury, both in space and in amount.
No arbitrary rule on the subject can be laid down, but it will be for
commissioners and juries, under the supervision of the courts, to
determine upon the facts of each case, whether or not there has been
such damage to property as should be compensated.

Error to a judgment of the Circuit Court of Roanoke county
in a proceeding to condemn land. Judgment for the defendant.
Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Robertson, Hall & Woods* and *F. W. Christian,* for the plain-
tiff in error.

*Archer A. Phlegar* and *McClung & McClung,* for the defend-
ant in error.

KEITH, P., delivered the opinion of the court.

Upon the motion of the Tidewater Railway Company, the
circuit court of the county of Roanoke appointed commissioners
to ascertain what would be a just compensation for "such part
of the land, of the freehold whereof Jeremiah Shartzer is ten-
ant, and for such other property as is proposed to be taken by
the Tidewater Railway Company, and to assess the damages, if
any, resulting to the adjacent or other property of said tenant
or owner, or to the property of any other person, beyond the
peculiar benefits that will accrue to such properties, respec-
tively, from the construction and operation of the company's
works."

So much of their report as we are concerned with is as fol-

lows: "To the lands of Julia A. Shartzer, no part of whose land is taken: Damages to dwelling, land and business conducted thereon, for annoyance from smoke, noise, dust, cinders and danger from fire resulting from the construction and operation of the road in a lawful manner, $600.00. We did not allow anything to Julia A. Shartzer for damages for interference with means of access to her property, as we do not think she is damaged in this respect."

The Tidewater Railway Company excepted to this report as to the allowance made to Julia A. Shartzer; and, thereupon, "The court being of opinion to sustain the exceptions and recommit the said report on account of the form thereof, and because the same included damages to the business of the said Julia A. Shartzer, by consent of parties, it is agreed that the said report be amended and treated as if it read as to her property as follows: 'To the lands of Julia A. Shartzer, no part of which are taken, we fix the damages at the sum of $600, and in ascertaining said damages, we took into consideration the proximity thereof to the said railroad, and find that the difference in the market value of said property before the construction and operation of said railroad, and afterwards, will be the sum of $600, and that said depreciation in said market value and consequential damages to said property will be caused by smoke, noise, dust and cinders arising from the proper, ordinary and lawful operation of said road.'"

To the report as amended by this decree the applicant again excepted, and on consideration of the said exception, it was overruled by the court, and the report, as amended, confirmed. From that order a writ of error was allowed by one of the judges of this court.

The specific constitutional provision upon the subject of taking property for public uses, as it existed prior to 1902, is found in the constitution of 1869, Art. 5, sec. 14, which reads as follows: "The general assembly shall not pass    *    *    *

any law whereby private property shall be taken for public uses without just compensation."

It was uniformly held, under that provision and the statute which carried it into execution, that there could be no recovery for an injury or damage to property, no part of which was actually taken. This construction resulted in much hardship, and was a denial of justice in cases where the use, the enjoyment and the value of property were greatly impaired under conditions which were held not to amount to a taking within the meaning of the law, as it then existed.

Influenced by these considerations, the convention which framed the constitution of 1902, amended sec. 14, Art. 5, which now appears as section 58, Art. 4, of the constitution of 1902, by which is prescribed certain prohibitions on the powers of the general assembly, and among them that "it shall not enact any law whereby private property shall be taken or damaged for public uses, without just compensation;" and the general assembly, when it came to legislate upon the subject and give effect to this constitutional provision, in section 1105f, cl. 5, provided, where a corporation authorized to have land condemned for its uses has complied with the requirements of the preceding section, for the "appointment of commissioners to ascertain what will be a just compensation for the land or other property, or for the interest or estate therein, proposed to be condemned for its uses, and to award the damages, if any, resulting to the adjacent or other property of the owner, or to the property of any other person beyond the peculiar benefits that will accrue to such properties, respectively, from the construction and operation of the company's works."

With respect to the statute, we shall first observe that if the constitution of the state were to be construed as a grant of power to the Legislature, the statute just quoted could be maintained as being a reasonable and proper exercise by the legislature of the delegated power. But such is not the rule of construction,

as applied to the constitution of the state. The Legislature is clothed with full legislative authority, except so far as it is restrained by some provision of the constitution, either expressed or necessarily to be implied from the terms of that instrument. When, therefore, the constitution says that the legislature shall not enact any law whereby private property shall be taken or damaged for public purposes without just compensation, a statute which declares that a corporation invoking the exercise of the power of eminent domain must make just compensation, not only for the land or other property proposed to be condemned for its uses and damages, if any, resulting to the adjacent or other property of the owner, but also for damages to the property of any other person, is within the legitimate scope of the legislative power.

Coming then, to a consideration of the statute, it cannot be doubted that, by the change of the law in the constitution and statute, it was plainly intended to enlarge the right to compensation.

"Of this," says Lewis on Eminent Domain, at sec. 232, speaking of similar amendments, there can be no question. Any other construction would render the words nugatory. They are an extension of the common provision for the protection of private property. The words, injured or destroyed, were not used in vain and without meaning. It was intended that they should have effect, and unless they operate to impose a liability not previously existing, they are without operation. The supreme court of the United States, referring to the constitution of Illinois, says: 'The use of the word "damaged" in the clause providing for compensation to the owners of private property appropriated to public use, could have been used with no other intention than that expressed by the state court. Such a change in the organic law of the state was not meaningless. But it would be meaningless if it should be adjudged that the constitution of 1870 gave no additional or greater security to private

property sought to be appropriated to public use than was, guaranteed by the former constitution.' " Lewis on Em. Dom. (2nd ed.), Vol. 1, sec. 232, and authorities there cited.

The same author says: "The words in question should be liberally construed. The provisions of the constitution requiring compensation to be made for property taken, injured or damaged for public use, are intended for the protection of private rights. They are remedial in character. They should, therefore, be liberally construed in favor of the individual whose property is affected, and the authorities so hold. The language of the constitution is to be construed liberally so as to carry out and not defeat the purpose for which it was adopted." Sec. 232a.

It will be observed that in the discussion of this subject, text-writers and adjudicated cases use the words, "damaged," "injured" and "injuriously affected" as being equivalents and meaning in substance the same thing.

Considering the terms of the constitution and of the statute, as they stood prior to 1902, and recognizing that the changes then introduced were designed to enlarge the right to compensation and extend it to cases where, under the old law, compensation was denied, it would seem that the language employed in the existing constitution and code are not difficult of interpretation, and should be held to embrace and give a remedy for every "physical injury to property, whether by noise, smoke, gases, vibrations or otherwise." Lewis on Em. Dom., sec. 236.

It is contended on the part of plaintiff in error that "the proper construction of the clause under consideration is to take away from public service corporations the immunity that they have heretofore enjoyed under legislative sanction, and place them on the same footing with individuals and private corporations. The words 'or damaged' mean actionable damages; that is, such damages as would form the basis of an action at common law or under some general statute, such as may be caused by the physical invasion of property or an in-

terference with some right, public or private, appurtenant to the property."

To this proposition we cannot give our unqualified assent. A person, natural or artificial, who is asking nothing with respect to his property, is limited in the use of his own property only by the maxim, that he must enjoy it in such a manner as not to injure that of another; or, less literally but more accurately perhaps, "So use your own property as not to injure the rights of another." Broom's Leg. Max. (7th ed.), p. 364.

But in the case before us, the Tidewater Railway Company was not the owner of the property. It had been unable to acquire what it needed because of its "inability to agree on terms of purchase with those entitled" to the land it desired, and, therefore, had invoked the exercise of the power of eminent domain; and the state has seen fit to prescribe upon what terms that power shall be exercised.

It appears that the language of our constitution was taken from that of Illinois, which was adopted in 1870, and had been the subject of judicial construction by the courts of that state and of the United States.

In *Rigney* v. *City of Chicago,* 102 Ill. 64, the city had constructed a viaduct or bridge on a public street, near its intersection with another street, thereby cutting off access to the first-named street from the plaintiff's house and lot over and along the street intersected, except by means of a pair of stairs, whereby the plaintiff's premises fronting on the latter street and near the obstruction were permanently damaged and depreciated in value, by reason of being deprived of such access. It was held that the city was liable in damages for the injury, and in the discussion of the case rights as they existed under the constitution of 1848 and those rights as extended by the constitution of 1870 are compared, the court saying: "The restriction of the remedy of the owners of private property to cases of actual physical injury to the property was under the

constitution of 1848, which simply provided that private property should not 'be taken or applied to public use,' without just compensation, etc.   The constitution of 1870, however, provides that 'private property shall not be taken *or damaged* for public use without just compensation,' thus affording redress in cases not provided for by the constitution of 1848, and embracing every case where there is a direct physical obstruction or injury to the right of user or enjoyment of private property, by which the owner sustains some special pecuniary damage in excess of that sustained by the public generally, which, by the common law, would, in the absence of any constitutional or statutory provision, give a right of action."

In *Chicago & W. I. R. Co.* v. *Ayres,* 106 Ill. 511, the court observes: "It is needless to say our decisions have not been harmonious on this question, but in the case of *Rigney* v. *Chicago,* 102 Ill. 64, there was a full review of the decisions of our courts, as well as the courts of Great Britain, under a statute containing a provision similar to the provision in our constitution.   The conclusion there reached was that, under this constitutional provision, a recovery may be had in all cases where private property has sustained a substantial damage by the making and using of an improvement that is public in its character—that it does not require that the damage shall be caused by a trespass, or an actual physical invasion of the owner's real estate; but if the construction and operation of the railroad or other improvement is the cause of the damage, though consequential, the party may recover.   We regard that case as conclusive of this question."

The Supreme Court of the United States, in *Chicago* v. *Taylor,* 125 U. S. 161, 31 L. Ed. 638, 8 Sup. St. 820, referring to the Illinois cases, says: "We concur in that interpretation. The use of the word 'damaged' in the clause providing for compensation to owners of private property, appropriated to public use, could have been with no other intention than that ex-

pressed by the state court. Such a change in the organic law of the state was not meaningless. But it would be meaningless if it should be adjudged that the constitution of 1870 gave no additional or greater security to private property, sought to be appropriated to public use, than was guaranteed by the former constitution."

In *Baker* v. *Boston Elevated Ry. Co.,* 183 Mass. 178, 66 N. E. 711, it is held, that under statutes 1894, ch. 548, sec. 8, providing for compensation for damage caused by the construction, maintenance or operation of the lines of the Boston Elevated Railway Company, "noise which operating with other causes would constitute a private nuisance to abutting property, if it were not authorized, is special and peculiar damage, for the whole of which compensation can be recovered, without seeking to determine how much of the effect is due to that part of the noise which alone would not constitute a liability and how much to the excess." In the course of its opinion, the court in that case says: "In dealing with the question which is presented, we have a helpful analogy in the rules of common law. Noise is necessarily incident to the transaction of many kinds of business, and so long as it is not excessive, it is not unlawful. But when it is so great as to become a nuisance to property in the vicinity, it is actionable. It is judged by its effect, and not merely by its cause. In England, the difference in effect between damage which, as between private persons would give a right of action for a nuisance, and that which is permissible in the use of land, is often treated as an important consideration, if not an absolute test, in deciding what shall be paid for by a corporation acting under public authority. * * * Disturbance which constitutes a private nuisance may be treated as causing damage different in kind, and not merely in degree, from that caused by disturbance which falls short of being a nuisance. Damage from noise which is unlawful by reason of its excess may well be considered unlike the detriment which is

so slight as to be legally permissible in the ordinary use of property.

"In the case at bar it is found that but for the statutory authority the noise 'would constitute a private nuisance of a grave character to the petitioner's said estate.'  At common law, in such a case, the rights of the owner of the property affected, and his relations to the cause of the disturbance, are treated as very different from those of the general public who are also affected by it, and he is entitled to compensation in damages. We are of opinion that noise, such as would constitute a private nuisance to abutting property if it were not authorized, should be treated as causing special and peculiar damage under this statute, which entitles the land-owner to compensation."

In *Swift & Co.* v. *Newport News,* 105 Va. 108, 52 S. E. 821, 3 L. R. A. (N. S.) 404, this court said:  "Where private property has been simply damaged by a public improvement, but no part thereof has been taken, the measure of damages is the diminution in the value of the property by reason of the improvement—difference between the fair market value of the property immediately before and after the construction of the public improvement."

But, as was said by the Supreme Court of California, in *Eachus* v. *Los Angeles Consol. El. R. Co.,* 103 Cal. 614, 37 Pac. 750, 42 Am. St. Rep. 149, quoted with approval by Lewis on Em. Dom., sec. 236:  "The constitution does not, however, authorize a remedy for every diminution in the value of property that is caused by a public improvement.  The damage for which compensation is to be made is a damage to the property itself, and does not include a mere infringement of the owner's personal pleasure or enjoyment.  Merely rendering private property less desirable for certain purposes, or even causing personal annoyance or discomfort in its use, will not constitute the damage contemplated by the constitution; but the property itself must suffer some diminution in substance, or be rendered

intrinsically less valuable, by reason of the public use. The erection of a county jail or a county hospital may impair the comfort or pleasure of the residents in that vicinity, and to that extent render the property less desirable, and even less salable; but this is not an injury to the property itself, so much as an influence affecting its use for certain purposes. But whenever the enjoyment by the plaintiff of some right in reference to his property is interfered with, and thereby the property itself is made intrinsically less valuable, he has suffered a damage for which he is entitled to compensation."

"A recovery has not been allowed," says Lewis on Em. Dom., same section, " in any case, unless there was some physical injury to the plaintiff's property, or, by noise, smoke, gases, vibrations or otherwise, an interference with the street in front of his property, or with some right appurtenant thereto, or which he was entitled to make use of in connection with his property. On the other hand, several cases have held that mere depreciation, caused by the proximity of a public improvement, afforded no ground for redress."

No question is raised in this case as to the amount of damages allowed. The sole question is whether or not the depreciation in market value and consequential damages to property, caused by smoke, noise, dust and cinders, arising from the ordinary and lawful operation of a railroad, are the subject of compensation, under the provisions of our constitution and laws.

"The operation of a railroad," says Lewis on Em. Dom., sec. 230, "the switching of cars to and fro, the use of coal bins, stock yards, etc., may be a serious annoyance to the occupiers of adjacent property, by reason of the noise, smoke, cinders, vibrations, smells, etc. The use and value of property may be greatly impaired thereby. The question whether such an impairment of property constitutes an independent cause of action is quite distinct from the question whether such annoyances may be taken into consideration when part of a tract is taken, or

when a railroad is laid in a street or highway. In the latter case, the annoyances referred to are mere incidents to what is in law the main grievance. But in the former case they constitute the principal and only cause of complaint. Whether the impairment caused by such annoyances constitutes a taking, we have already considered. But whether a taking or not, it would seem that such an impairment of property was a damage or injury within the purview of recent constitutions. Where the use and operation of a railroad  *  *  * depreciates the value of property by reason of the noise, smoke, vibration, etc., his property is damaged within the constitution and he is entitled to compensation."

Such being, as we think, the proper interpretation of the constitution, the thought at once arises, that it will give rise to an indefinite number of claims. We cannot state this proposition more satisfactorily than is done by the author from whom we have already quoted so extensively.

In Sec. 227, Lewis on Em. Dom., it is said, of this contention, that it is without merit. "The constitution guarantees compensation for property damaged or injured for public use. The right to compensation is co-extensive with the damage or injury, both in space and in amount. This point was fully considered in the McCarthy case (*McCarthy* v. *Metropolitan Bd. of Wks.,* L. R. 8 C. P. 191), and in reference to it Justice Bramwell says: 'If it is to be asked where the line is to be drawn, I answer, not by distance in point of measurement. Premises might be injuriously affected by the stopping of a landing place ten miles away, if there was no other within twenty of the premises affected. The line is to be drawn by ascertaining whether the premises are actually or potentially affected for present or other purposes, or the man, whether it is only the person who happens to be using them. It is said this might give the right to make an immense number of claims. Suppose it did. Suppose there

were one thousand claims of one thousand pounds each. If they are well founded, one million pounds of property is destroyed, and why is not that part of the cost of the improvement; and, if taken into account as such, why should not the loser of it receive it?"

Lord Penzance, in the same case, observes: "It was asked in argument, where are the claims to compensation to stop, if the rule is so applied? The answer, I think, is that in each case the right to compensation will accrue whenever it can be established to the satisfaction of the jury or arbitrator that a special value attaches to the premises in question by reason of their proximity to, or relative position with the highways obstructed, and that this special value has been permanently destroyed or abridged by the obstruction. If this limit be thought to be a wide one, and the number of claimants under it likely to be numerous, that is only the misfortune of the undertaking, for the limit does not exceed the range of the injury. On the other hand, all claim for compensation will vanish as, receding from the highway, the case comes into question of lands of which (though their owners may have used the highway and found convenience in so doing) it cannot be predicated and proved that the value of the lands depends on the position relatively to the highway which they occupy." That case dealt with the obstruction of a highway, but its reasoning applies as well to the diminution in value occasioned by smoke, noise, dust and cinders.

It is impossible to lay down any arbitrary rule upon the subject—certainly none based upon mere measurements. It will be for commissioners and juries, under the supervision of the courts, to determine upon the facts of each case whether or not there has been such damage to property as should be compensated. Of course, claims without merit will be preferred, but it will be the duty of those entrusted with the administration of the law—commissioners, juries and courts—to separate

those deserving of compensation from those which are without merit.

For these reasons we are of opinion that there is no error in the judgment of the circuit court, and it is affirmed.

*Affirmed.*