Statement.

## Staunton.

### McGehee v. Tidewater Railway Co.

September 10, 1908.

Absent, Keith, P.

1. WATERS AND WATERCOURSES — *Obstructing Natural Streams.* — A riparian owner has no right, in the improvement and protection of his own premises, no matter how careful he may be, to interfere with or obstruct the flow of water in natural streams, with beds and banks, in such manner as to occasion injury to the land of another riparian proprietor.

2. WATERS AND WATERCOURSES—*Surface Water—Obstruction—Railroad* CULVERTS.—Under the qualified rule of the common law existing in this State, it is the duty of a railroad company, in the construction of its roadbed, to provide reasonably adequate means of escape for surface water (water not flowing in a stream with bed and banks) under its roadbed, and through its property. Proper and skillful railroad construction calls for the building of necessary culverts to take care of the surface water so that it may not pond back upon an upper proprietor of land.

Error to a judgment of the Corporation Court of Roanoke city in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Moomaw & Moomaw* and *Robertson & Wingfield,* for the plaintiff in error.

*Robertson, Hall, Woods & Jackson,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

The facts in this case are undisputed. At the time of the commission of the grievance complained of, the plaintiff in error (the plaintiff below) was carrying on the business of a florist in the city of Roanoke. On the rear side of the lot on which the business was conducted, there is a depression along which the surface water, which gathers from the surrounding water shed, was accustomed to flow into another depression running from west to east and emptying into Roanoke river. Although storm water habitually flowed along this swale, the bottom was covered with sod and was not abraded. The defendant in error acquired a strip of ground adjoining the plaintiff's lot on the south, for its right of way and passenger station and approaches; and, in the construction of its roadbed and in elevating its property to a uniform grade by filling in the land up to the plaintiff's line, it built across the depression, which likewise passed over the company's land, without making provision for the escape of surface water through its premises by culvert, drain, or otherwise. The result of that method of construction was to retain and cast back the waters upon the plaintiff's lot. Consequently, in the fall of 1906, after a heavy and protracted rainfall, the plaintiff's premises were flooded, and his greenhouse, boilerhouse and a portion of his garden were overflowed by the pent up waters. A great part of his plants and flowers were entirely destroyed, and the remainder damaged, either by the water or from the cold caused by his inability to heat them, the boiler having also been overflowed.

The plaintiff thereupon, brought this action of trespass on the case against the railway company, to recover damages for the loss sustained; and to an adverse judgment this writ of error was allowed him.

Two general rules prevail in the United States with respect to surface water, the civil law rule and the common law rule. The former is thus expressed in the Code Napoleon, sec. 640:

"Inferior lands are subjected, as regards those which lie higher, to receive the waters which flow naturally therefrom to which the hand of man has not contributed. The proprietor of the lower ground cannot raise a bank which shall prevent such flowing. The superior proprietor of the higher lands cannot do anything to increase the servitude of the lower."

On the other hand, by what is known as the common law rule (though it is said the subject has never received the consideration of the English courts, but that the doctrine originated in Massachusetts in 1857, in the case of *Parks* v. *Newburyport,* 10 Gray 28. See 30 Am. & Eng. Ency. L., 331, note), "surface water is regarded as a common enemy, and every landed proprietor has the right, as a general proposition, to take any measures necessary to the protection of his property from its ravages, even if in doing so he prevents its entrance upon his land and throws it back upon a coterminous proprietor." 30 Am. & Eng. Ency. L., 330, note, where the authorities are assembled.

While it is true that this so-called common law doctrine prevails in Virginia, it is, nevertheless, subject to the important qualification, that the privileges conferred by it "may not be exercised wantonly, unnecessarily, or carelessly; but is modified by that golden maxim of the law, that one must so use his own property as not to injure the rights of another. It must be a reasonable use of the land for its improvement or better enjoyment, and the right must be exercised in good faith, with no purpose to abridge or interfere with the rights of others, and with such care with respect to the property that may be affected by the use or improvement as not to inflict any injury beyond what is necessary. When the exercise of the right is thus guarded, although injury may result to the land of another, he is without remedy." Riely, J., in *Norfolk &c. R. Co.* v. *Carter,* 91 Va. 587, 592-3, 22 S. E. 517.

The general rule fairly deducible from the authorities is that, with respect to natural streams of water, that is to say,

such streams as usually flow along fixed channels having beds and banks—one riparian owner has no right, in the improvement or protection of his own premises, no matter how careful he may be, to interfere with or obstruct the flow of the water in such manner as to occasion injury to the land of another riparian proprietor.  And the qualified rule of the common law in this State, with regard to surface water (in a case such as we are considering), imposes upon the lower land owner, in the betterment or protection of his own property, the duty of exercising his rights, not wantonly, unnecessarily, or carelessly, but in good faith and with such care as not to needlessly injure the upper owner.

The declaration charges that the defendant "wrongfully, unjustly and negligently constructed said railroad near the property of said plaintiff by making a fill thereon    *    *    * without providing a drain thereunder to convey the storm water which gathered at that place off of the property of the plaintiff."  The court, it is true, in response to that allegation, charged the jury "that if they believed from the evidence that the defendant, by the construction of its roadbed, dammed water on the plaintiff's premises in a negligent and careless manner," the defendant would be liable in damages; yet, at the same time, it withdrew the case from the jury by declaring in another instruction, that unless there was a well defined channel *worn or cut into the soil* on the plaintiff's premises, through which the water was acustomed to flow (a condition which admittedly did not exist), the defendant was not liable.

In the leading case in this State, of *Norfolk, &c. R. Co.* v. *Carter, supra,* the court approved an instruction which told the jury, "that any interference with the drainage of the plaintiff's lands or the flow of surface water which could not be prevented by the proper and skillful construction of defendant company's road with proper and skillfully constructed culverts, was proper to be taken into consideration by the plaintiff when the defendant company purchased its right of way from the plaintiff;

and if the jury believe from the evidence that the railroad through plaintiff's land was properly and skillfully constructed, with properly and skillfully constructed culverts, in proper numbers, and the same have been kept in proper order, then they cannot assess any damages against the said defendant company on account of ponds or of accummulations of water, though caused by the building and construction of said road." In that instruction the principle is recognized that proper and skillful railroad construction calls for the building of necessary culverts to take care of the flow of surface water.

So, also, in *Railway Company* v. *Chapman,* 39 Ark. 463, 43 Am. Rep. 280, cited with approval in the above case, it is held: "A railway company may not be allowed, by building its roadway across a natural drainage of surface water, to obstruct the customary flow, to the detriment of upper proprietors, but must supply reasonable means of passing it through the road-bed, so as to save the upper proprietors harmless to the same extent as before." The court furthermore observes, at pages 288-289: "Its only property was its right of way. It was not necessary to the enjoyment of that that the bed should be solid throughout. The damage, of course, was unnecessary, and was not the result of a fair and proper exercise of its franchise. It was not reasonable that it should render so much property useless when it might so easily have prevented it without detriment to its operation. It ought not to be allowed to protect itself in an obvious wrong by any technical distinction between running and surface water."

It is strongly argued that the case also comes within the influence of section 58 of the Constitution, which declares that the general assembly "shall not enact any law whereby private property shall be taken or damaged for public uses, without just compensation." *Swift, etc.* v. *Newport News,* 105 Va. 108, 52 S. E. 821, 3 L. R. A. (N. S.) 404; *Tidewater Ry. Co.* v. *Shartzer,* 107 Va. 562, 59 S. E. 407, 1 Va. App. 575. We do not deem it necessary, however, in this instance, to consider the scope of that provision.

The case was clearly tried upon a false theory of the respective rights and duties of the parties. The trial court erred in holding, as a matter of law, that no duty rested upon the defendant to supply reasonably adequate means of escape for surface water under its roadbed and through its property. The question, whether or not the company, in the construction of its road and improvement of the grounds and approaches to its station, was reasonably prudent and careful to avoid injury to the plaintiff from the flooding of surface water, ought to have been submitted to the jury under correct instructions.

For these reasons, the judgment must be reversed, the verdict of the jury set aside, and the case remanded for a new trial to be had not in conflict with the views expressed in this opinion.

*Reversed.*