## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## TOWN OF FARMVILLE V. WELLS.

### June 10, 1920.

1. STREETS AND HIGHWAYS—*Surface Water—Liability of City for Flooding Abutting Lots.*—Where a municipality raises the grade of a street above the level of an abutting lot, it is liable for damages for injury to the lot occasioned by the throwing of surface water upon the lot through the change of grade, without provision or with inadequate provision for its drainage.

2. STREETS AND HIGHWAYS—*Surface Water—Liability of City for Flooding Abutting Lots.*—The liability of a municipality for damage to an abutting owner from surface water, occasioned by raising the grade of the street above the level of the abutting owner's lot, is not based upon the change in the grade which the municipality is authorized by law to make, but upon the negligent and improper manner in which the work is done, in .not providing adequate means for carrying off surface water.

3. STREETS AND HIGHWAYS—*Surface Water—Liability of City for Flooding Abutting Lots.*—In an action for damages by an abutting owner against a municipality for injury to a lot, occasioned by a change of grade in the street throwing surface water back on the lot, the question whether in grading it was necessary to fill up the ditches and gutters, and, if necessary, whether it was practicable to substitute other sufficient ditches and gutters to take the water off, are matters of fact to be considered on the trial, in connection with the other circumstances of the case, in determining the question of the municipality's negligence in the execution of the work.

4. CONTINUANCES—*Absence of Witness.*—The absence of a witness who has not been summoned, where there was no assurance that his testimony could be had at another trial if the case were continued, and whose testimony was such as could have been given by any other expert in such matters, is not ground for a continuance.

5. Continuances—*Discretion of Trial Court—Appeal.*—Trial courts are given a wide discretion in the matter of continuances; and, while their rulings on the question are subject to review, they will not be set aside unless plainly erroneous.

Error to a judgment of the Circuit Court of Prince Edward county, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*E. Warren Wall* and *Watkins & Brock,* for the plaintiff in error.

*J. Taylor Thompson,* for the defendant in error.

Burks, J., delivered the opinion of the court.

Mrs. Wells (the defendant in error) recovered a judgment against the town of Farmville for $1,000 damages for injury to her property occasioned by throwing surface water back on her premises.

The following errors are assigned in the petition for a writ of error: (1) Overruling the demurrer to the declaration, (2) refusing to grant a continuance, (3) refusing to set aside the verdict as contrary to the law and the evidence, (4) granting instructions for the plaintiff, and (5) refusing to grant instructions for the defendant. There was not only abundant evidence to support the verdict, but the decided preponderance of the evidence was in favor of the finding. So that the verdict could only be set aside, if at all, because it was contrary to the law. It would not be useful or edifying to discuss the assignments of error *seriatim,* as all of them except No. 2 on the subject of the continuance, involve the application of the law on the subject of surface water to the facts of the case.

67

There is some conflict in the evidence as to the conditions on the plaintiff's premises, but this is settled by the verdict of the jury. The case, as made by a preponderance of the evidence, supported by said verdict, is as follows: Mrs. Wells owned a house and lot situate on Pine street in the town of Farmville. Her yard was on grade with Pine street. The house was a comfortable dwelling house, with one cellar room underneath, which was "a good nicely white-washed, clean, comfortable cellar," with a floor in it, and it was used for a cook room and dining room. The lot was cultivated as a garden. It was the lowest lot on the block, and the other lots above and around it drained through this garden to and across Pine street. In passing through the garden the water is said to have "a natural drainage all through the garden," there was "a channel through Mrs. Wells' property." At the point where the water crossed Pine street, one of the witnesses describes the crossing as a gully, and says that "the gully in the street was at least a foot to two feet lower than Mrs. Wells' garden." This gully was also described as three or four feet deep and five or six feet wide, and covered with boards so as to make a bridge over it in the street. Witnesses differ to some extent as to the depth and width of this gully, but concur in the fact that it was sufficient to carry off the surface water from above. The evidence for the plaintiff clearly establishes that she was not disturbed by the surface water prior to the change of the grade of the street hereinafter mentioned. In 1914 the town of Farmville changed the grade of Pine street. It took out the wooden bridge over the gully which crossed the street, filled in the gully, put in a fifteen inch drain pipe and also a ten inch pipe to carry off the water which had formerly passed along the gully, and cut down the hills facing the gully, filled in over the drain pipes, and also raised the grade of the street in front of Mrs. Wells' residence above the level of her lot. While

there is conflict in the testimony, the testimony for the plaintiff, which was believed by the jury, abundantly shows that the drain pipes put in by the town were wholly inadequate, and as a result whenever there came a hard rain the garden of the plaintiff was flooded and water poured into her cellar. The situation is thus described by one of the witnesses for the plaintiff: "The pipes are not big enough to carry the water, and it goes back and fills the garden and gets full, then it comes in the cellar, and when the cellar gets full, it goes all over the property." The same witness says: "I have seen the water cover the garden six or eight times, have seen water in the cellar waist deep several times." The plaintiff herself testified much more in detail to the same effect. The result is that the plaintiff's property has been greatly damaged, and her property which would formerly have rented for $15 or $20 a month could not now be rented at any price. Some of the witnesses place her damage at a much larger sum than that fixed by the verdict of the jury. The jury viewed the premises before the testimony was introduced. The town introduced testimony to show that the premises had been flooded only three times—once when there was a waterspout, at another time when the drainage pipes had become filled with roots, which were speedily removed, and the third time when the flow of water through the pipes had been obstructed by the laps of a tree cut down under orders of the plaintiff. We have not recited this evidence in detail as it was for the jury to weigh the evidence.

[1-3] The law applicable to cases of this kind has been repeatedly announced by this court, and it is not necessary to refer to decisions in other jurisdictions.

In *Smith* v. *Alexandria*, 33 Gratt. (74 Va.) 208, 215 (36 Am. Rep. 788), the facts and the holding of the court thereon are stated as follows:

"The plaintiff is the owner of a corner lot, at the inter-

section of two streets in the city of Alexandria, which lot was enclosed, occupied and used by him as a coal and wood-yard and for other purposes. There was a ditch or gutter in front of the lot on each side which conveyed all the surface water that flowed by, from, and over the lot to the intersection of the said streets, and thence, by the means of other ditches and gutters, it passed on and into the proper channel and was carried off. The city council in grading these streets elevated them three feet in front of the plaintiff's lot, filled up the ditches and gutters, and did not cut others or provide other means for the water to flow on and escape as formerly; and thus the water was stopped and thrown back on the plaintiff's lot, causing the damage specified in the declaration, for which compensation is demanded.

"These acts of the city council are all charged to have been done 'negligently, carelessly,' etc.; for the terms, 'negligently,' 'carelessly,' etc., as used in the declaration, should be taken, we think, as applied and intended to be applied not only to the elevation of the streets, but also to the filling up of the then existing ditches and gutters and the omission to cut others or supply other means for the escape of the water. The complaint is not of the mere grading of the streets, a work which the council was authorized by law to do, but of the negligent and improper manner in which the work was done, causing damage. Whether in grading it was necessary to fill up the ditches and gutters, and if necessary, whether it was practicable to substitute other sufficient ditches and gutters to take the water off, are matters of fact to be considered on the trial, in connection with the other circumstances of the case, in determining the question of negligence in the execution of the work."

In *Powell* v. *Wytheville*, 95 Va. 73, 75, 27 S. E. 805, 806, it is said: "The complaint in this case, as stated in the declaration, is not for the mere work which was done on the

street, a work which the defendant was authorized to do, but also for damage for the negligent and improper manner in which the work was done, causing damage. Whether in doing the work it was necessary to fill up the ditch, depression, or gutter, and, if necessary, whether it was practicable to substitute other sufficient ditches and gutters to take the water off, are matters of fact to be considered on the trial in connection with the other circumstances and facts of the case in determining the question of whether the defendant was guilty of negligence in executing the work."

In *McGehee* v. *Tidewater Railway Co.,* 108 Va. 508, 62 S. E. 356, the facts were very similar to those in the case at bar. They are stated in the opinion as follows: "At the time of the commission of the grievance complained of, the plaintiff in error (the plaintiff below) was carrying on the business of a florist in the city of Roanoke. On the rear side of the lot on which the business was conducted, there is a depression along which the surface water, which gathers from the surrounding water shed, was accustomed to flow into another depression running from west to east and emptying into Roanoke river. Although storm water habitually flowed along this swale, the bottom was covered with sod and was not abraded. The defendant in error acquired a strip of ground adjoining the plaintiff's lot on the south, for its right of way and passenger station and approaches; and, in the construction of its roadbed, and in elevating its property to a uniform grade by filling in the land up to the plaintiff's line, it built across the depression, which likewise passed over the company's land, without making provision for the escape of surface water through its premises by culvert, drain, or otherwise. The result of that method of construction was to retain and cast back the waters upon the plaintiff's lot. Consequently, in the fall of 1906, after a heavy and protracted rainfall, the

plaintiff's premises were flooded, and his greenhouse, boiler-house and a portion of his garden were overflowed by the pent up waters. A great part of his plants and flowers were entirely destroyed, and the remainder damaged, either by the water or from the cold caused by his inability to heat them, the boiler having also been overflowed."

Upon this state of facts the court said:

"In the leading case, in this State, of *Norfolk, etc., R. Co.* v. *Carter, supra* (91 Va. 587, 22 S. E. 517), the court approved an instruction which told the jury 'that any interference with the drainage of the plaintiff's lands or the flow of surface water which could not be prevented by the proper and skillful construction of defendant company's road with proper and skillfully constructed culverts, was proper to be taken into consideration by the plaintiff when the defendant company purchased its right of way from the plaintiff; and if the jury believe from the evidence that the railroad through plaintiff's land was properly and skill-fully constructed, with properly and skillfully constructed culverts, in proper numbers, and the same have been kept in proper order, then they cannot assess any damages against the said defendant company on account of ponds or of accumulations of water, though caused by the building and construction of said road.' In that instruction the principle is recognized that proper and skillful railroad construction calls for the building of necessary culverts to take care of the flow of surface water.

"So, also, in *Railway Company* v. *Chapman,* 39 Ark. 463, 43 Am. Rep. 280, cited with approval in the above case, it is held: 'A railway company may not be allowed, by building its roadway across a natural drainage of surface water, to obstruct the customary flow, to the detriment of upper proprietors, but must supply reasonable means of passing it through the roadbed, so as to save the upper proprietors harmless to the same extent as before.' The

court furthermore observes, at pages 288-289: 'Its only property was its right of way. It was not necessary to the enjoyment of that that the bed should be solid throughout. The damage, of course, was unnecessary, and was not the result of a fair and proper exercise of its franchise. It was not reasonable that it should render so much property useless when it might so easily have prevented it without detriment to its operation. It ought not to be allowed to protect itself in an obvious wrong by any technical distinction between running and surface water.'

"It is strongly argued that the case also comes within the influence of section 58 of the Constitution, which declares that the General Assembly 'shall not enact any law whereby private property shall be taken or damaged for public uses, without just compensation.' *Swift, etc.,* v. *Newport News,* 105 Va. 108, 52 S. E. 821, 3 L. R. A. (N. S.) 404; *Tidewater Ry. Co.* v. *Shartzer,* 107 Va. 562, 59 S. E. 407. We do not deem it necessary, however, in this instance to consider the scope of that provision."

The last mentioned case is so similar to the case at bar that we might well have rested our conclusion on that case alone.

The declaration in the case at bar is not as specific in some particulars as it should have been, but after setting out in substance the location and ownership of the plaintiff's lot, it alleges that the town raised the grade of Pine street, and did so wrongfully, negligently and unlawfully, in that it failed to provide "proper drains and culverts, across or under said street, to convey the storm or surface water off of the premises of the plaintiff," and in consequence thereof the injuries complained of were inflicted. The topography of the lot should have been described with greater particularity, but no bill of particulars was asked for by the defendant, doubtless because the *locus in quo* was well known to all of the parties, and it is manifest that

the defendant was not injured by the lack of a more particular description.

The rulings of the trial court on the instructions were not prejudicial to the defendant, and the verdict was amply supported by the evidence.

[4, 5] The only other error assigned is the refusal of the trial court to grant the defendant a continuance. This action was brought in August, 1917, and the trial took place in January, 1919. The bill of exception states that "the defendant moved for a continuance on the ground that H. A. Stecker, who, however, had not been summoned, a material witness as an expert, and the man that did the work, who was serving in the army, could not be reached. And counsel for the defendant stated that when last heard from he was somewhere in Texas. And thereupon the court overruled the motion because of the fact that there are plenty of experts that can be had." No evidence was offered in support of the motion, but even if the statement alleged as grounds of the motion had been shown to be true, the motion was properly overruled. The witness had not been summoned, there was no assurance that his testimony could be had at another trial if the case were continued, and his testimony was such as could have been given by any other expert in such matters. Trial courts are given a wide discretion in the matter of continuances, and while their rulings on the question are subject to review, they will not be set aside unless plainly erroneous. *Norfolk & W. Ry. Co. v. Spears,* 110 Va. 110, 65 S. E. 482; *Means* v. *Bank,* 146 U. S. 620, 13 Sup. Ct. 186, 36 L. Ed. 1107. We find no error in the judgment complained of, and hence it will be affirmed.

*Affirmed.*