Syllabus.

# Staunton.

## Raleigh Court Corporation v. Faucett.

September 18, 1924.

1. Waters and Watercourses—*Surface Water—Adjoining Landowners—Duty of Lower Landowner.*—The law of Virginia, as to surface water not usually flowing along fixed channels, having beds and banks, but flowing over the surface along the natural contour of the land from a higher to a lower plane, imposes upon the lower landowner the duty of so using his land as not needlessly or negligently to injure the upper owner in the enjoyment of his property. It is an application of the maxim *sic utere tuo ut alienum non laedas.*

2. Waters and Watercourses—*Surface Water—Adjoining Landowners—Duty of Lower Landowner—Case at Bar.*—In the instant case, an action by an upper against a lower landowner on account of surface water thrown back on the premises of the upper landowner, defendant admitted liability for temporary damages, but it appeared that the drainage pipe put under street constructed by defendant was eight inches above the surface of plaintiff's lot, so that in case of heavy rains the water would stand upon the lot of plaintiff to the depth of eight inches before any of it was carried off by the drain pipe.

   *Held:* That this was a permanent injury to the plaintiff's property, which could have been easily avoided and for which she was entitled to recover.

3. Waters and Watercourses—*Surface Water—Adjoining Landowners—Duty of Lower Landowner—Measure of Damages.*—The measure of damages, where a lower landowner needlessly or negligently injures the upper landowner by backing surface water upon his property is the difference between the market value of the property with proper drainage and the market value as thus injured.

4. Eminent Domain—*Constitutional Provision as to Just Compensation—Private Corporations.*—The constitutional provision (section 58 of the Constitution of 1902) that no private property shall be taken or damaged for public use without just compensation has no application to a private corporation without the power of eminent domain which opens a street on its own property.

5. Eminent Domain—*Right of Private Property—Taking Private Property for Public Use.*—Independently of the Constitution, the private

property of one person cannot be transferred to another against his consent, with or without compensation. Private ownership of property is one of the fundamental rights of the citizen not surrendered by entering into organized government. (Va. Constitution, article I, section 1.) But the rights of the public are superior to those of the individual, and if private property is needed for a "public use," it may be taken for that purpose by the legislature either directly or through such agencies as it may designate, but even then it cannot be either "taken or damaged" without making just compensation therefor.

6. ADJOINING LANDOWNERS—*Dedication to Public Uses—Injury to Others.*— The owner of property may, with impunity, dedicate it to a public use, but whatever use he makes of his property, whether for the benefit of himself or the public, he must so use it as not to injure another.

7. ADJOINING LANDOWNERS—*Dedication to Public Uses—Opening of Street by Landowner—Case at Bar.*—Defendant, a land company, owned a lot adjacent to that of plaintiff and opened a street over that lot. Plaintiff brought an action for damages against defendant for injury to his lot through the opening and grading of the street.

*Held:* That the grading and improving of its lot by defendant was not an actionable injury to plaintiff, who had not purchased with reference to a street on defendant's adjacent lot, and who had made no improvements on her own lot with reference to the grade of defendant's adjacent lot.

8. ADJOINING LANDOWNERS—*Dedication to Public Uses—Opening of Street by Landowner—Damnum Absque Injuria—Case at Bar.*—In the instant case plaintiff complained that the construction of a street on an adjacent lot owned by defendant and the raising of the grade on that lot prevented access to her lot on the side next to the new street and thereby damaged her.

*Held:* That plaintiff had no such right of access before the street was constructed, and the construction of the street by the defendant wholly on its own property did not confer any such right. If she sustained any damage from the careful, skillful construction of the street, it was *damnum absque injuria.*

9. ADJOINING LANDOWNERS—*Opening of Street by Landowner—Case at Bar.*—In the instant case plaintiff complained that the construction of a street by defendant entirely on an adjacent lot belonging to defendant, and the change in grade of the lot to adapt it to street purposes, had left the rear of her lot in a hole. No part of plaintiff's land was taken, and no physical injury was done to it, and no right appurtenant thereto was invaded.

*Held:* That this was not such damage to her property as the law

allows compensation for, even if the constitutional provision had applied to the case.

10. Adjoining Landowners—*Public Use—Streets.*—Every owner of land must so use his property as not to injure another, but subject to this restriction there is no reason why the owner may not permit the use to be by the public as well as by himself. The mere dedication of private property to a public street is not an invasion of the rights of the owners of adjacent property. Usually cross streets are beneficial to lots within the general scheme affected, and especially to inside lots that are made corner lots by the opening of the new street.

11. Adjoining Landowners—*Landowner Opening Street on His Property— Change of Grade of Alley in Rear of Lots.*—In opening a new street on its lot adjacent to that of plaintiff, defendant made some change in the grade of the alley in rear of plaintiff's lot at the point where it connected with the new street, whereby plaintiff's access to the rear of the lot was rendered less convenient. The alley was a mere dirt road not graded or improved, and access could easily be made at an insignificant cost.

  *Held:* That plaintiff's claim was *de minimis.*

12. Adjoining Landowners—*Opening Street on Adjoining Lot—Case at Bar.*—Defendant in the instant case owned a lot in the middle of a block adjacent to a lot of plaintiff, and opened a new street entirely upon this lot. Plaintiff had no rights therein except as an adjacent owner, and did not and could not build upon her lot or otherwise use or improve it with reference to a street upon defendant's lot. The latter lot was a vacant lot, apparently held for residence purposes, and plaintiff did nothing on her lot looking to the opening of a street on defendant's lot.

  *Held:* That defendant's action was not *per se* a violation of any right of plaintiff protected by the Constitution or otherwise, and was not an attempt of the city, acting through defendant under the disguise of private ownership, to do indirectly what the city could not do directly.

13. Adjoining Landowner—*Opening Street on Lot—Building Restrictions— Case at Bar.*—The instant case was an action by plaintiff against defendant, a land corporation, for damages from the opening of a street by defendant on a lot adjacent to plaintiff's, and it was held that the mere fact that lots of the plaintiff and others were purchased under a map showing the blocks, lots, streets and alleys, and that certain restrictions were placed upon the purchasers as to the building line, the value of the houses to be erected on the lots, the classes of persons to whom sales could be made and other like matters, indicating that the property was to be used for residential purposes, did not estop the defendant from dedicating one or more of the lots shown on said map to use as a public street.

Error to a judgment of the Law and Chancery Court of the city of Roanoke, in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Woods, Chitwood, Coxe & Rogers, A. C. Hopwood* and *L. G. Muse,* for the plaintiff in error.

*Dillard, Moomaw & Dillard,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

This was a proceeding by motion for a judgment brought by Mrs. Faucett, hereinafter called the plaintiff, against the Raleigh Court Corporation, hereinafter called the defendant, to recover a judgment for damages to a lot owned by her in the city of Roanoke. The cause of action arose out of the opening and grading of a street on a lot owned by the defendant adjacent to the lot owned by the plaintiff. The plaintiff claimed damages both on account of surface water thrown back on her premises, and on account of the filling up of its lot by the defendant. The defendant filed a plea admitting temporary damages to the plaintiff to the amount of $50.00 on account of the surface water and paid that amount into court, but denied all other damages. The jury found a verdict for the plaintiff for $1,460.00, which the trial court refused to set aside, and defendant applied for and obtained a writ of error.

There is little dispute about the facts. The following

statement of facts, taken from the petition, is substantially correct:

"Prior to the year 1911, the defendant, a private corporation, acquired and subdivided into lots a large boundary of land which has subsequently been included within the corporate limits of the city of Roanoke. The defendant had prepared a map of the subdivision, which has never been recorded, but which is filed by it as an exhibit in the record. It is a portion of the block shown on that map as section 24 that is involved in this litigation. That block is bounded on the west by Arlington road, which runs approximately north and south; on the east by Blenheim road, which is parallel to Arlington road; on the south by Sherwood avenue, which is at right angles to Arlington and Blenheim roads; and on the north by Elmington avenue, which runs at approximately a right angle to Arlington and Blenheim roads. Midway between and parallel with Arlington and Blenheim roads and connecting Sherwood and Elmington avenues, is an alley designated as Shady Lane.

"Lots 1 to 14, inclusive, of section 24, front west on Arlington road, and lots 15 to 27, inclusive, front east on Blenheim road. Lots 1 and 15 are the most southerly lots in the block, and lots 14 and 27 are the most northerly lots in the block. Lots 8 and 9, owned respectively by the plaintiff and defendant, are involved in this litigation. Sherwood avenue, which bounds section 24 on the south, does not cross Arlington road on a straight line but enters it from the west about midway of the block and opposite lots 8 and 9 here involved. Reference to the sketch here inserted will make the situation easily understood.

ARROWS INDICATE SLOPE OF SURFACE

"The defendant sold off both lots 8 and 9. The former was by mesne conveyances acquired by the plaintiff. The defendant subsequently repurchased lot 9. For the purpose of developing its property fronting on and east of Blenheim road, the defendant undertook to open a new street through section 24 connecting Arlington and Blenheim roads. This street, called New Sherwood in the evidence, runs through lot 9 and the lot immediately in the rear of it (No. 23), also owned by the defendant. The location of the new street over lots 9 and 23 was dictated by the topography of the ground, as only thus could Blenheim road be drained. Incidentally, this location of the new street afforded more ready access to the main thoroughfare to the city by eliminating the offset in Sherwood avenue. Blenheim road is approximately twenty-four inches higher in elevation than Arlington road and a distance of 420 feet east of it. The new street was accordingly built on a grade to conform to the established grades of Arlington and Blenheim roads, thus allowing for drainage purposes a fall of six inches to the hundred feet. The front of the plaintiff's lot and of the three lots south of it are level with Arlington road. These lots all slope toward the rear and toward the north, *i. e.*, in the northeasterly direction from the front. Rain water falling upon these four lots would pass over the rear and northeast corner of the plaintiff's lot (No. 8) across the defendant's lot (No. 9) into a depression a few hundred feet to the northeast, where it was gradually absorbed by the soil. The arrows on the sketch * * indicate the direction of the drainage.

"In constructing the new street the defendant filled in the rear of its lot (No. 9) to a depth of approximately four and one-half feet. The extreme north-

east corner of the plaintiff's lot was thus left four and one-half feet lower than the grade of the defendant's lot, through which the new street was to be opened. But the south side of the new street was to be seven and one-half feet inside the defendant's own lot so that in making the fill no dirt and no part of the embankment would be on the land of the plaintiff. Before the work was completed, a rain of extraordinary severity caused the fill to settle at a point opposite the rear of the plaintiff's lot. As a result of such settling, the fill was at this point lower than either Arlington or Blenheim roads. Water was thus brought from both of them and discharged on the plaintiff's lot. A portion of the fill gave way and caused a small amount of dirt to be deposited on the lot of the plaintiff and the water to be backed up thereon to a depth of three or four feet. After this rain an eight-inch culvert was put under the fill, which was brought up to grade and paved with macadam. A sidewalk was laid on the south side of the new street and work on a sidewalk on the north side was in progress when the case was tried."

What is called in the foregoing statement a culvert was a metal pipe, eight inches in diameter.

The trial court gave five instructions tendered by the plaintiff, to four of which the defendant excepted, and refused four tendered by the defendant, to which action of the court the defendant also excepted. These rulings constitute eight of the assignments of error. The only other error assigned was the refusal of the trial court to set aside the verdict as contrary to the law and the evidence. But in the petition for the writ of error it is said: "It is admitted that if the jury were properly instructed, there was evidence to sustain their verdict. No discussion of this assignment will therefore be necessary."

Each of the instructions was separately discussed, and the discussion took a very wide range, but in our view of the case it will not be necessary to follow that discussion in detail. The whole controversy between the parties is dependent upon the proper answer to two questions: (1) What were the rights and duties of the parties, respectively, as to the surface water, and (2) as to the grading and use of lot 9 as a street?

In *Farmville* v. *Wells*, 127 Va. 528, 103 S. E. 596, all of the former cases decided by this court on the subject of surface water are cited and reviewed, and it will not be necessary to review them again. The law of this State, as settled by said cases, as to surface water not usually flowing along fixed channels, having beds and banks, but flowing over the surface along the natural contour of the land from a higher to a lower plane, imposes upon the lower landowner the duty of so using his land as not needlessly or negligently to injure the upper owner in the enjoyment of his property. It is an application of the maxim *sic utere tuo ut alienum non laedas*. *Smith* v. *Alexandria*, 33 Gratt. (74 Va.) 208, 36 Am. Rep. 788; *Norfolk & W. R. Co.* v. *Carter*, 91 Va. 587, 22 S. E. 517; *Powell* v. *Wytheville*, 95 Va. 73, 27 S. E. 805; *McGhee* v. *Tidewater R. Co.*, 108 Va. 508, 62 S. E. 356.

In *McGhee* v. *Tidewater Railway Co.*, 108 Va. 508, 62 S. E. 356, the facts were very similar to those in the instant case. The facts, as stated in the opinion, were as follows: "At the time of the commission of the grievance complained of, the plaintiff in error (the plaintiff below) was carrying on the business of a florist in the city of Roanoke. On the rear side of the lot on which the business was conducted, there is a depression along which the surface water, which gathers from the surrounding water shed, was accus-

tomed to flow into another depression running from west to east and emptying into Roanoke river. Although storm water habitually flowed along this swale, the bottom was covered with sod and was not abraded. The defendant in error acquired à strip of ground adjoining the plaintiff's lot on the south for its right of way and passenger station and approaches; and, in the construction of its roadbed, and in elevating its property to a uniform grade by filling in the land up to the plaintiff's line, it built across the depression, which likewise passed over the company's land, without making provision for the escape of surface water through its premises by culvert, drain, or otherwise. The result of that method of construction was to retain and cast back the waters upon the plaintiff's lot. Consequently, in the fall of 1906, after a heavy and protracted rainfall, the plaintiff's premises were flooded, and his greenhouse, boiler house and a portion of his garden were overflowed by the pent up waters. A great part of his plants and flowers were entirely destroyed, and the remainder damaged, either by the water or from the cold caused by his inability to heat them, the boiler having also been overflowed." Upon this state of facts the court said:

"In the leading case, in this State, of *Norfolk, etc., R. Co.* v. *Carter, supra* (91 Va. 587, 22 S. E. 517), the court approved an instruction which told the jury 'that any interference with the drainage of the plaintiff's lands or the flow of surface water which could not be prevented by the proper and skillful construction of defendant company's road with proper and skillfully constructed culverts, was proper to be taken into consideration by the plaintiff when the defendant company purchased its right of way from the plaintiff; and if the jury believe from the evidence that the railroad

through plaintiff's land was properly and skillfully constructed, with properly and skillfully constructed culverts, in proper numbers, and the same have been kept in proper order, then they cannot assess any damage against the said defendant company on account of ponds or of accumulations of water, though caused by the building and construction of said road.' In that instruction the principle is recognized that proper and skillful railroad construction calls for the building of necessary culverts to take care of the flow of surface water.

"So, also, in *Railway Co.* v. *Chapman*, 39 Ark. 463, 43 Am. Rep. 280, cited with approval in the above case, it is held: 'A railway company may not be allowed, by building its roadway across a natural drainage of surface water, to obstruct the customary flow to the detriment of upper proprietors, but must supply reasonable means of passing it through the roadbed, so as to save the upper proprietors harmless to the same extent as before.' The court furthermore observes, at pages 288-289: 'Its only property was its right of way. It was not necessary to the enjoyment of that that the bed should be solid throughout. The damage, of course, was unnecessary, and was not the result of a fair and proper exercise of its franchise. It was not reasonable that it should render so much property useless when it might so easily have prevented it without detriment to its operation. It ought not to be allowed to protect itself in an obvious wrong by a technical distinction between running and surface water.' "

[1-3] In the instant case the defendant admits liability for the temporary damage done to the plaintiff's property. But, in addition thereto, it appears that the natural drainage of parts of lots 5, 6, and 7 is over the northeast corner of the plaintiff's lot, thence across lots 9 and 10 to a natural depression about 200 feet

from the plaintiff's lot where it is gradually absorbed by the soil. It also appears that the drainage pipe put under the street by the defendant is eight inches above the surface of the plaintiff's lot, so that in case of a rainfall in excess of what would be absorbed by the lots above that of the plaintiff, the water would stand upon the lot of the plaintiff to the depth of eight inches before any of it would be carried off by the drain pipe. This is a permanent injury to the plaintiff's property which could have been easily avoided and for which she is entitled to recover. The fact that heavy rains sufficient to cause water to pond back on the plaintiff's lot are not of frequent occurrence affects the amount of damages which the plaintiff is entitled to recover, rather than the right of recovery. The space in which the water would naturally accumulate is quite small, according to the testimony, and the failure of defendant to provide proper drainage therefor is negligence for which defendant is liable to the plaintiff. The measure of this item of damage—that is, the permanent damage to the plaintiff—is the difference between the market value of the lot with proper drainage and its market value with only such drainage as is hereinbefore stated.

Instruction No. 4, given for the plaintiff, is copied in the margin.* The instruction is plainly wrong, and we have been unable to understand why it should have been asked or given.

* "The court instructs the jury that the Constitution of Virginia provides that 'no private property shall be taken or damaged for public use without just compensation.'

"Hence, if the jury believe from the evidence, not taking into consideration the question of damage by surface water, that the defendant has converted lot 9 into a street for public use, and that, in so doing, the defendant has changed the established grade of the land; and that the plaintiff is the owner of property improved with reference to an established grade of land; and that the defendant has caused thereby directly and consequentially damage to the property of the plaintiff, then the jury should find for the plaintiff such sum as will justly compensate her for said damage, regardless of whether said street be carefully and skillfully constructed or not."

[4, 5] The defendant was a private corporation without the power of eminent domain. It neither claimed nor attempted to exercise any such power, and the constitutional provision referred to had no bearing on the case. The Constitution (section 58) declares that the legislature "shall not enact any law whereby private property shall be taken or damaged for public use without just compensation," but no such claim was asserted or exercised. What the defendant did was not by virtue of any legislative grant, but by virtue of its ownership of lots 9 and 13. Independently of the Constitution, the private property of one person cannot be transferred to another against his consent, with or without compensation. Private ownership of property is one of the fundamental rights of the citizen not surrendered by entering into organized government. Va. Constitution, article I, section 1. But the rights of the public are superior to those of the individual, and if private property is needed for a "public use," it may be taken for that purpose by the legislature either directly or through such agencies as it may designate, but even then it cannot be either "taken or damaged" without making just compensation therefor. *Richmond* v. *Carneal*, 129 Va. 388, 106 S. E. 403, 14 A. L. R. 1341, and cases cited.

[6, 7] The owner of property may, with impunity, dedicate it to a public use, but whatever use he makes of his property, whether for the benefit of himself or the public, he must so use it as not to injure another. The question presented, therefore, is: Was the grading and improvement of lots 9 and 13 as a street an actionable injury to the plaintiff, who owned the lot adjacent to lot 9? If the defendant were today the owner of lots 9 and 13, which are now within the limits of the city of Roanoke, and should convey them to

the city for street purposes, and the city should grade and make an improved street thereon, without in any way encroaching upon the property of the plaintiff, could the plaintiff, who had not purchased with reference to a street on lot 9, and who had made no improvements on lot 8 with reference to the grade of lot 9, maintain an action against the city for damages? To ask the question is to answer it.

Prior to the construction of the street, the defendant was the fee simple owner of lot No. 9, and had the right to occupy every foot of it. It could cover the entire lot with buildings if it saw fit to do so. It could raise or lower the grade of it at will so long as it did not encroach upon the rights of others, and the mere fact that it obstructed or prevented the access of the plaintiff to her lot from lot No. 9, was not a legal damage. She had no right to come upon lot No. 9, nor to assume that the defendant would never change the grade of its lot in whole or in part. The improvements upon the plaintiff's lot were made with reference to the grade on the front, which was not changed, and not with reference to the grade on the side, which was liable to be changed at any time by the owner of the lot.

[8] The plaintiff complains that the construction of the street on lot No. 9 and the raising of the grade on that lot four and one-half feet prevented access to her lot on the side next to the new street and thereby damaged her. She had no such right of access before the street was constructed, and the construction of the street by the defendant wholly on its own property did not confer any such right. If she has sustained any damage from the careful, skillful construction of the street, it is *damnum absque injuria*, and yet instruction No. 4 allowed recovery, "regardless of whether said street be carefully and skillfully constructed or not."

[9] At the time of the unusually heavy rain hereinbefore referred to, and while the street was in the course of construction, some dirt from the defendant's embankment washed over on the plaintiff's lot, but no portion of the defendant's embankment rests upon the plaintiff's lot, or is in any way dependent upon it for support. On the contrary, the embankment is seven and one-half feet from the plaintiff's line, and was so placed to prevent encroachment upon the plaintiff's lot. No part of the plaintiff's land has been taken, no physical injury has been done to it, and no right appurtenant thereto has been invaded. The gravamen of the plaintiff's complaint in reference to the construction of the street is that the change in the grade of lot 9 to adapt it to street purposes has left the rear of her lot "in a hole." This is not such damage to her property as the law allows compensation for, even if the constitutional provision applied to the case. *Tidewater Railway Co.* v. *Shartzer*, 107 Va. 562, 59 S. E. 407, 17 L. R. A. (N. S.) 1053; *Lambert* v. *Norfolk*, 108 Va. 259, 61 S. E. 776, 17 L. R. A. (N. S.) 1061, 128 Am. St. Rep. 945; *Wagner* v. *Bristol*, 108 Va. 594, 62 S. E. 391, 25 L. R. A. (N. S.) 1278; Lewis on Em. Dom., sec. 236; Dillon Mun. Corp., sec. 587-d.

[10] Every owner of land must so use his property as not to injure another, but subject to this restriction there is no reason why the owner may not permit the use to be by the public as well as by himself. The public use is not *per se* a violation of the rights of an adjacent owner. Usually cross streets are beneficial to lots within the general scheme affected, and especially to inside lots that are made corner lots by the opening of the new street. *Sipe* v. *Alley*, 117 Va. 819, 822, 86 S. E. 122. The mere dedication of private property to a public street is not an invasion of the rights of the

owners of adjacent property. *Daniel* v. *Doughty,* 120 Va. 853, 92 S. E. 848.

[11] Some change was made by the defendant in the grade of the alley in rear of plaintiff's lot at the point where it connects with the new street, whereby plaintiff's access to the rear of the lot was rendered less convenient. The alley is a mere dirt road not graded or improved and access could be easily made at an insignificant cost. The claim is *de minimis,* if not actually barred by the reservations in the deed under which the plaintiff claims title.

In the sales of lots by the defendant, it reserved "the right to modify the plan by changing the size and shape of blocks and lots, width, grade, direction and location of streets, avenues and alleys," and it is said that "its territory has become a part of the city of Roanoke."

[12] It is suggested by counsel for the plaintiff that defendant's "streets are kept up by said city with the taxes of the people, and in building the street in question the defendant is not acting as a private individual improving his own private property for private uses, but is acting as an implied agent of the city of Roanoke, and, under the disguise of private ownership, doing indirectly what the city and the public, who get the benefit of the street, could not do directly," and that "section 58 of the Constitution should apply in such case, else great injustice will be done to parties injured."

Whatever force the suggestion might otherwise have, it has no application to the facts of the instant case. Lot 9 was a vacant lot in the middle of block 24. The plaintiff had no rights therein except as an adjacent owner, and did not and could not have built upon her lot or otherwise used or improved it with reference to a street upon lot 9. The latter lot was a vacant lot,

apparently held for residence purposes, and the plaintiff did nothing on her lot looking to the opening of a street on lot 9. It was not a case of change of grade of a street after an abutting owner had built upon his lot or otherwise improved it with reference to an established grade. The defendant simply opened and graded a street on its own lot in which, and with reference to which, the plaintiff had no rights or interests. This was not *per se* a violation of any right of the plaintiff protected by the Constitution or otherwise.

[13] The mere fact that lots of the plaintiff and others were purchased under a map showing the blocks, lots, streets and alleys, and that certain restrictions were placed upon the purchasers as to the building line, the value of the houses to be erected on the lots, the classes of persons to whom sales could be made, and other like matters, indicating that the property was to be used for residential purposes, did not estop the defendant from dedicating one or more of the lots shown on said map to use as a public street.

The plaintiff is not entitled to recover for any damages, real or supposed, done to her lot by the mere opening of the new street on lot 9, but she is entitled to recover for the temporary damage to her lot by surface water thrown upon it in July, 1922, and also for the permanent damage resulting from the failure of the defendant to put a proper drainage culvert under the new street, and for the permanent damage, if any, resulting from the flow of water from the banks of the new street upon the property of the plaintiff. The measure of the permanent damage is to be determined by the diminution in the market value of the plaintiff's lot by reason of the existence of said items of permanent damage.

For the reasons stated, the judgment of the trial court will be reversed, the verdict of the jury set aside and the case remanded to the trial court with directions to empanel a jury to assess the temporary and permanent damage aforesaid done to the plaintiff's lot, but excluding any damage, real or supposed, arising from the grading and construction of a street on lot 9, excepting such, if any, as may result from the flow of water from the banks of the new street upon the plaintiff's lot. Costs will be awarded to the plaintiff in error as the party substantially prevailing.

*Reversed.*